[No. 56714–0. En Banc. July 5, 1990.]

RONALD MELVILLE, *Individually and as Personal Representative, Appellant,* v. THE STATE OF WASHINGTON, *Respondent.*

*Strand & Caplan* and *Nathan J. Heath,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Michael P. Lynch* and *Delbert W. Johnson, Assistants,* for respondent.

BRACHTENBACH, J.—Three months after his release from prison, a former inmate murdered his ex–wife, their young daughter and the ex–wife's viable unborn child. He then committed suicide. This suit against the State of Washington is by the surviving spouse of the inmate's ex–wife and father of the unborn child. The suit is brought in his individual capacity and as personal representative of the estates of the victims. Defendant's motion for summary judgment was granted. We affirm.

The controlling issue is whether the State had a duty to provide mental health treatment to the inmate while he was in custody.

Plaintiff contends that internal policy directives of the Department of Corrections (DOC) mandated mental health treatment, but at the same time concedes that participation was on a voluntary basis. From there plaintiff constructs a theory of liability that had treatment been offered, the inmate would have accepted it voluntarily, that treatment would have been successful, and that the inmate would not have killed the victims.

The inmate, Alfons David, was married to his ex–wife from 1976 to 1979. Following dissolution of their marriage they continued to live together and a daughter was born to them. In 1984 Alfons beat and shot Margot, resulting in a second degree assault conviction and a 15–month sentence.

With credit for jail time, Alfons was in DOC's custody from March 1, 1985, to November 2, 1985. Almost 3 months after release from custody, on January 27, 1986, Alfons shot and killed Margot, their daughter, and the child with whom Margot was pregnant by her husband, plaintiff Melville.

The summary judgment order does not state that it is based on lack of a genuine issue of material fact nor does it state why defendant was entitled to judgment as a matter of law. There is no transcript of argument or of the trial court's ruling. However, both parties focus upon the issue of defendant's duty to provide mental health treatment. That legal issue is dispositive; therefore, we do not reach the issue of legal or factual causation.

■ We do note plaintiff's failure to sufficiently establish facts to raise any genuine issues of material fact. In his memorandum opposing summary judgment plaintiff asserts extensive "facts." These are based upon an affidavit by plaintiff's lawyer who states that he has read various records, files, reports and depositions. He asserts that the facts asserted from those sources are accurate. CR 56(e) requires affidavits to be made on personal knowledge. The source documents from which the lawyer drew his "facts" are not in the record. This hearsay affidavit does not meet the requirement of CR 56(e). The explicit, but plain standards of CR 56(e) must be complied with in summary judgment proceedings. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 753 P.2d 517 (1988).

Plaintiff defines the scope and source of the claimed duty, specifically:

> The duty claimed by plaintiff in the instant case to provide mental health services for David arises out of administrative rules adopted pursuant to statutory authority. *Plaintiff claims only that the State should have provided the services actually available in accordance with existing rules and regulations.*

Brief of Appellant, at 20–21.

In deciding when violation of a statute or administrative regulation shall be considered in determining liability, this

court has relied upon the Restatement (Second) of Torts § 286 (1965):

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
> (a) to protect a class of persons which includes the one whose interest is invaded, and
> (b) to protect the particular interest which is invaded, and
> (c) to protect that interest against the kind of harm which has resulted, and
> (d) to protect that interest against the particular hazard from which the harm results.

*Kness v. Truck Trailer Equip. Co.,* 81 Wn.2d 251, 257, 501 P.2d 285 (1972).

To determine whether there is a duty to which a § 286 analysis would apply, it is first necessary to determine what "requirements" are imposed by the statute or regulation purportedly creating a duty. It is self–evident that one cannot claim violation of a statute or regulation without ascertaining what is required or prohibited by the statute.

Plaintiff cites three statutes. RCW 72.08.101 and RCW 72.09.050 are set out in the footnote.[1] Those statutes are nothing more than general statements of the authority and the responsibility of the executive officer of DOC. RCW 72.09.010 is the third statute and the one upon which plaintiff relies to establish the legislative policies which he contends authorized, implemented, and perhaps mandated the policy directives allegedly not complied with by DOC.

Plaintiff isolates the following provisions of RCW 72.09-.010.

---

[1]RCW 72.09.050 provides in part: "The secretary shall manage the department of corrections and shall be responsible for the administration of adult correctional programs, including but not limited to the operation of all state correctional institutions or facilities used for the confinement of convicted felons."

RCW 72.08.101 provided: "The secretary of corrections shall provide for the establishment of programs and procedures for convicted persons at the state penitentiary, which are designed to implement the intent of the legislature under RCW 72.09.010." RCW 72.08.101 was in effect during the inmate's confinement. It was repealed by Laws of 1988, ch. 143, § 17.

> It is the intent of the legislature to establish a comprehensive system of corrections for convicted law violators within the state of Washington to accomplish the following objectives.
> (1) *The system should ensure the public safety. . . .*
> . . . .
> (5) . . . Since virtually all offenders return to the community, it is wise for the state and the communities to make an investment in effective rehabilitation programs for offenders and the wise use of resources.

Brief of Appellant, at 21.

 These statutes do not require the kind of specific actions from which a duty in tort should arise. The basic principle is that "statutory policy statements as a general rule do not give rise to enforceable rights and duties." *Aripa v. Department of Social & Health Servs.*, 91 Wn.2d 135, 139, 588 P.2d 185 (1978). The generalized policy statement in RCW 72.09.010 should be contrasted with an earlier version of RCW 72.08.101 (Laws of 1965, 1st Ex. Sess., ch. 9, § 3) which provided that "the director of institutions shall provide for the establishment of programs and procedures . . . which are designed to be corrective, rehabilitative and reformative . . .". The court in *Bresolin v. Morris*, 88 Wn.2d 167, 171, 558 P.2d 1350 (1977), in construing that statute observed: "But to say that the government has an interest in rehabilitation and that this is a legitimate institutional goal is one thing. To say that a prisoner has an enforceable right to such rehabilitation is another." Similarly, in *In re Young*, 95 Wn.2d 216, 219, 622 P.2d 373 (1980), the court held that the earlier version of RCW 72.08.101's requirement that the Department create rehabilitative programs was "for the benefit of the prison population generally, and to serve society's interest in the rehabilitation of criminals, rather than to vest any right in individual prisoners."

The statutes and regulations considered in *Aripa, Bresolin,* and *Young,* were more specific and more mandatory than the general policy statements in the statutes at issue here. Under our cases the inmate himself in this case could not have insisted upon the mental health treatment which

plaintiff contends DOC had to provide to him. If those persons who would directly benefit from the services, *i.e.*, the inmates, do not have a right to demand particular treatment, it logically follows that members of the public cannot claim a duty to them.

We hold that the statutes cited by plaintiff did not create the duty to provide mental health treatment to a prison inmate.

Plaintiff's brief refers interchangeably to DOC's "rules and procedures," "policy directives" and "administrative rules." Plaintiff does not distinguish between these differing documents. Plaintiff does not cite any administrative rule within the terms of the Administrative Procedure Act (APA).[2]

Plaintiff instead relies upon documents,[3] each entitled "Policy Directive." They are not published in the Washington Administrative Code. Defendant argues that the policy directives are not administrative rules or regulations, but merely policy directives governing internal management of prisons. Brief of Respondent, at 14. Plaintiff filed no reply brief so has made no response to this argument.

We have held that administrative rules may impose a duty. *Tauscher v. Puget Sound Power & Light Co.*, 96 Wn.2d 274, 285, 635 P.2d 426 (1981). However, plaintiff has provided no analysis or authority on the issue whether issuance of an internal policy directive represents the kind of governmental action from which a duty may arise. Neither party cites former RCW 34.04.010(2)(e) which provided that the definition of rule "does not include (i) statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public". Neither party discusses the significance, if any, at least by analogy, of the 1988 amendments which

---

[2]RCW 34.04 was in effect at the time of the events here concerned. RCW 34.05 is the current Administrative Procedure Act.

[3]Plaintiff attached 15 "policy directives" to his summary judgment response memorandum but discusses only 6 specific directives in his brief.

exclude DOC from the APA, at least in certain respects, and which draw a distinction between a rule and a policy statement. RCW 34.05.030; RCW 34.05.010(14), (15). *See Posey v. State,* 180 Cal. App. 3d 836, 848–49, 225 Cal. Rptr. 830 (1986) (drawing a distinction between regulations having the force of law and policy manuals or recommended procedures which lack the force of law). Plaintiff has not established that a policy directive is the equivalent of an administrative rule which may create liability under appropriate circumstances. We decline to explore the issue on this record and express no opinion thereon.

The policy directives relied upon by plaintiff *may* represent DOC's implementation of a mental health care plan within the state corrections system. Some of these directives make broad policy statements, similar to those found in the statutes. Other directives, however, are more specific, such as Policy Directive 520.030 which provides for interinstitutional transfer of inmates when an appropriate mental health resource is only available at another facility. However, the parties do not address the legal effect of an administrative rule or policy directive which requires a greater, different, or more specific standard of performance than mandated by statute. We therefore express no opinion on the issue.

We do note that even if we assume, arguendo, that a duty might arise from these policy directives, plaintiff fails to overcome the threshold problem that the mental health treatment he contends should have been given was to be provided on a voluntary participation basis only.

To overcome the initial obstacle that participation in any mental health treatment was entirely voluntary, plaintiff offered the affidavits of two psychologists. Neither had any personal contact with the ex–inmate. One states that if anger management treatment had been offered to the inmate while in custody "he probably would have accepted the offer". Clerk's Papers, at 229. The other expressed the opinion that the inmate "was a reasonably good candidate for a domestic violence anger management program."

Clerk's Papers, at 247. These speculations are insufficient to raise an issue of fact.

In *Theonnes v. Hazen,* 37 Wn. App. 644, 681 P.2d 1284 (1984), the Court of Appeals affirmed a summary judgment in favor of the defendant when the plaintiff's expert opinion was based on speculation. "The opinion of an expert must be based on facts. An opinion of an expert which is simply a conclusion or is based on an assumption is not evidence which will take a case to the jury." *Theonnes,* at 648. *See also Group Health Coop. of Puget Sound, Inc. v. Department of Rev.,* 106 Wn.2d 391, 400, 722 P.2d 787 (1986); *Prentice Packing & Storage Co. v. United Pac. Ins. Co.,* 5 Wn.2d 144, 164, 106 P.2d 314 (1940) ("the opinions of expert witnesses are of no weight unless founded upon facts in the case. The law demands that verdicts rest upon testimony, and not upon conjecture and speculation"); 5A K. Tegland, Wash. Prac., *Evidence* § 297 (1989).

We also note that plaintiff's experts' speculations also ignore the fact that treatment was subject to availability of the program within the corrections system. The State established that because of overcrowding and other administrative concerns, the waiting time for entry into the available anger management program was longer than the period for which this inmate was in custody.

The judgment is affirmed.

CALLOW, C.J., and UTTER, DOLLIVER, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.