70 P.3d 954 (2003)
149 Wash.2d 589
M.W. and A.W., husband and wife, and the marital community; and M.W. and A.W., as guardians and parents of the minor child, J.C.W. f/k/a S.K.H., Respondents,
v.
DEPARTMENT OF SOCIAL AND HEALTH SERVICES, a division of the State of Washington; and State of Washington; and Dale Francis, an individual, Petitioners.
No. 72529-2.
Supreme Court of Washington, En Banc.
Argued January 23, 2003.
Decided June 12, 2003.
*955 Christine Gregoire, Attorney General, Narda Pierce, Solicitor General, Jeffrey Freimund, Senior Counsel, and Peter Helmberger and Talis Abolins, Assistant Attorneys General, for Petitioners.
Ross Taylor, University Pl., John Cain, Tacoma, for Respondents.
Bryan Patrick Harnetiaux, Debra Leigh Williams Stephens, Spokane, Amicus Curiae on Behalf of Wash. State Trial Lawyers Ass'n.
Wash. Assn. of Sheriffs & Police Chiefs, Katherine Collins, Olympia, Amicus Curiae on Behalf of Wash. Assn. of Sheriffs & Police Chiefs.
JOHNSON, J.
This case requires us to define the scope of the duty of the Washington State Department of Social and Health Services (DSHS) while investigating child abuse allegations. We must determine whether the statute requiring DSHS to investigate reported child abuse allows a claim against DSHS for negligent investigation under the facts of this case. Here, a child allegedly suffered from posttraumatic stress disorder due to DSHS investigators physically examining her during the course of investigating reported child abuse. Although the statute supports a claim for negligent investigation in limited situations, such a claim is available only when DSHS conducts a biased or faulty investigation that leads to a harmful placement decision, such as placing the child in an abusive home, removing the child from a nonabusive home, or failing to remove a child from an abusive home. Because a harmful placement decision is not the type of harm alleged by J.C.W., we hold her claim for negligent investigation fails and reverse the Court of Appeals.

FACTUAL AND PROCEDURAL HISTORY
During the period relevant to this case, M.W. and A.W. were foster parents to 16-month-old J.C.W.[1] On March 18, 1996, J.C.W.'s natural father alleged to DSHS that M.W. and A.W. had sexually abused the child. The natural father told Dale Francis, a DSHS supervisor, that J.C.W. often had vaginal redness, exhibited antisocial behavior, and was clingy. He also claimed pictures M.W. and A.W. took of J.C.W. in the bathtub were pornographic.
That same day, Francis called M.W. and A.W. and told them to bring J.C.W. into the DSHS office. Francis asked two female DSHS employees to determine if J.C.W. had any vaginal redness. These employees were "home support specialists" Insu Baker and Lila Stinson. Home support specialists are not social workers, nor do they have any training in physically examining children for sexual abuse.
A.W. took J.C.W. into a DSHS conference room, and Baker and Stinson came into the room. Kenneth Panitz, a program manager, Mat Rietzug, a social worker, and Francis remained in the doorway. Baker and Stinson asked A.W. to remove J.C.W.'s diaper and examined the child's vaginal area. J.C.W. alleges Baker and Stinson "pulled apart [J.C.W.'s] vaginal area to see if there was vaginal redness." Both Baker and Stinson pointed at and touched the child's genitals. Clerk's Papers (CP) at 76. In her deposition, A.W. testified that Baker and Stinson pulled the vaginal opening apart and put their hands inside her like a tissue box. A.W. testified that "there was [sic] two types of touching. One was the actual poking of the outer area. Not her legs, but her private areas.... The other was sticking their hands inside of her and pulling her apart...." CP at 227-29. Later, A.W. testified they did not penetrate the vagina.
The examination lasted for about four or five minutes, during which both J.C.W. and A.W. cried. Finally, another DSHS employee entered the conference room and told Baker and Stinson to "cover that baby up" after concluding there was no vaginal redness. CP at 76. A.W., Baker, and Stinson then took J.C.W. to Mary Bridge Hospital, where a doctor examined J.C.W. and found no signs of abuse. DSHS cleared M.W. and A.W. of all wrongdoing following this investigation.
*956 J.C.W., through her guardians, brought suit against DSHS and some of its individual employees for negligent investigation, claiming DSHS employees were negligent in examining J.C.W. for sexual abuse. Claims of assault, violation of civil rights, outrage, and invasion of privacy were also alleged in the initial complaint. A.W. brought separate claims for negligent infliction of emotional distress, outrage, and invasion of privacy on behalf of herself. M.W. brought a claim for invasion of privacy.[2] Later, a second amended complaint was filed, asserting only claims for assault, violation of civil rights, and negligent investigation on behalf of J.C.W.
DSHS moved for summary judgment. In opposition to summary judgment, J.C.W. filed a declaration in which a psychologist who had evaluated her stated the child suffered from posttraumatic stress disorder as a result of the physical examination by DSHS employees. DSHS countered that the agency was following its statutory duty to investigate reported child abuse when it examined J.C.W. The trial court granted DSHS's motion and dismissed all claims.
J.C.W., through her guardians, appealed only the dismissal of the negligent investigation claim, arguing DSHS had a duty to investigate reasonably, and that there remained an issue of material fact as to whether DSHS's investigation was reasonable in this case.

COURT OF APPEALS DECISION
In a split decision, Division Two of the Court of Appeals agreed with J.C.W., reversed the trial court's ruling, and remanded for trial. M.W. v. Dep't of Soc. & Health Servs., 110 Wash.App. 233, 235, 39 P.3d 993 (2002). The Court of Appeals recognized that "[i]n most negligent investigation claims, the allegations are that DSHS failed to adequately investigate a living situation either before removing or placing a child in the situation." M.W., 110 Wash.App. at 237, 39 P.3d 993. The court noted that this case was different because J.C.W. alleged that DSHS's negligence was in the manner of the physical examination, rather than in failing to investigate at all.
The Court of Appeals determined, however, that "[i]mplicit in the duty to investigate under RCW 26.44.050[[3]] is the duty to investigate reasonably," which includes following proper DSHS procedures. M.W., 110 Wash. App. at 238, 39 P.3d 993. The Court of Appeals reasoned that the duty of DSHS to investigate reasonably is not limited to failure to investigate before making a harmful placement decision. M.W., 110 Wash.App. at 239, 39 P.3d 993. The court concluded DSHS may violate this duty not only by failing to investigate reported abuse but also by doing "too much," that is, by investigating in a manner that is overzealous and procedurally improper. M.W., 110 Wash.App. at 239, 39 P.3d 993.
In a lengthy dissent, Judge Morgan examined 12 Washington cases that analyze DSHS's liability under the statute and categorized them into three factual contexts: (1) negligently placing a child in a home in which the child is abused; (2) negligently failing to remove a child from a home in which a child is abused; and (3) negligently removing a child from the home of an innocent parent. M.W., 110 Wash.App. at 255, 39 P.3d 993 (Morgan, J., dissenting). Judge Morgan concluded that "[n]one of these categories even suggest that if DSHS engages in intentional or negligent misconduct in the course of assembling information, it will be liable to a greater degree than the ordinary citizen." M.W., 110 Wash.App. at 256, 39 P.3d 993 (Morgan, J., dissenting). Judge Morgan wrote that the tort of negligent investigation should require proof that a child placement decision has been based on incomplete or skewed information; negligent investigation *957 should have nothing to do with DSHS's conduct while investigating per se. M.W., 110 Wash.App. at 256, 39 P.3d 993 (Morgan, J., dissenting). He reasoned that if DSHS commits a common law tort while investigating reported abuse, it may be liable for that tort, but not for negligent investigation. M.W., 110 Wash.App. at 256, 39 P.3d 993 (Morgan, J., dissenting).
DSHS petitioned for review of the Court of Appeals decision on the sole issue of whether a claim for negligent investigation under RCW 26.44.050 is available based on the facts of this case.

ANALYSIS
When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. See CR 56(c). Because the trial court dismissed J.C.W.'s claims based on a question of law, our review is de novo. See Hartley v. State, 103 Wash.2d 768, 775-76, 698 P.2d 77 (1985).
RCW 26.44.050 requires DSHS to investigate child abuse. We have previously recognized that this statutory duty implies a cause of action for children and parents for negligent investigation in certain circumstances. Tyner v. Dep't of Soc. & Health Servs., 141 Wash.2d 68, 79-81, 1 P.3d 1148 (2000). As the Court of Appeals noted, and both parties agree, the cases that have recognized such a claim involve allegations that DSHS failed to adequately investigate a child's living situation before making a placement decision to remove a child from a nonabusive home, let a child remain in an abusive home, or place a child in an abusive home. M.W., 110 Wash. App. at 237, 39 P.3d 993.
Here, J.C.W. argues that DSHS's duty to investigate abuse is broader than in those factual contexts. J.C.W. and amicus curiae Washington State Trial Lawyers Foundation (WSTLA Foundation) argue that this duty encompasses a general duty of care not to harm children during the course of an investigation. J.C.W. maintains that whether DSHS breached this duty when the DSHS home support specialists examined her is a question of fact for the jury. DSHS, on the other hand, maintains that its duty of care when investigating child abuse does not extend to the facts of this case. DSHS reads the purposes of the statute more narrowly, arguing its duty is limited to negligent placement decisions because those are the harms the statutory duty to investigate was designed to prevent.
When determining whether we may infer a cause of action from a statutory duty, we apply the analysis from Bennett v. Hardy, 113 Wash.2d 912, 919, 784 P.2d 1258 (1990).[4] In Bennett we recognized that when the legislature creates a duty, we may provide a remedy for its breach, if the remedy is appropriate to further the purposes of the statute and is needed to assure its effectiveness. Bennett, 113 Wash.2d at 920, 784 P.2d 1258. To determine whether an implied cause of action was warranted, the Bennett court adopted the approach used by federal courts, which requires us to determine (1) whether the plaintiff is within the class of persons for whose benefit the statute was enacted; (2) whether the legislative intent supports creating a remedy; and (3) whether the underlying purpose of the legislation is consistent with inferring a remedy. Bennett, 113 Wash.2d at 920, 784 P.2d 1258 (citing In re Wash. Pub. Power Supply Secs. Litig., 823 F.2d 1349, 1353 (9th Cir.1987)).
Here, the first prong of the Bennett analysis is not at issue because the plaintiff, a child who was allegedly harmed, is clearly within the class of persons the legislature intended to benefit when it passed chapter 26.44 RCW, entitled "Abuse of Children." Tyner, 141 Wash.2d at 77, 1 P.3d 1148. The second prong is also not at issue. We have already held, and it is not challenged here, that when analyzing chapter 26.44, we presume the legislature is aware of the doctrine of implied causes of action. Tyner, 141 *958 Wash.2d at 80, 1 P.3d 1148. Thus we assume the legislature intended to create a remedy under RCW 26.44.050 for children harmed by negligent investigation. Tyner, 141 Wash.2d at 80, 1 P.3d 1148. The only prong of the Bennett analysis at issue is the third.

THE UNDERLYING PURPOSE OF CHAPTER 26.44 RCW
The third prong of the Bennett analysis requires us to determine whether the underlying purpose of chapter 26.44 RCW is to protect children generally from harm by DSHS workers while investigating potential abuse. In a statement of purpose, the legislature explicitly stated the interests it intended to protect by creating the duty to investigate reported child abuse:
The Washington state legislature finds and declares: The bond between a child and his or her parent, custodian, or guardian is of paramount importance, and any intervention into the life of a child is also an intervention into the life of the parent, custodian, or guardian; however, instances of nonaccidental injury, neglect, death, sexual abuse and cruelty to children by their parents, custodians or guardians have occurred, and in the instance where a child is deprived of his or her right to conditions of minimal nurture, health, and safety, the state is justified in emergency intervention based upon verified information; and therefore the Washington state legislature hereby provides for the reporting of such cases to the appropriate public authorities.
RCW 26.44.010 (emphasis added).
As we have held when previously analyzing this statute, this statement of purpose encompasses two concerns: the integrity of the family and the safety of children within the family. Tyner, 141 Wash.2d at 80, 1 P.3d 1148. Consistent with these concerns, we have recognized that this statute creates an actionable duty that flows from DSHS to both children and parents who are harmed by DSHS negligence that results in wrongfully removing a child from a nonabusive home, placing a child into an abusive home, or allowing a child to remain in an abusive home. See generally Tyner, 141 Wash.2d at 77-82, 1 P.3d 1148.
The issue before us is whether these statutory concerns also support a broader duty to protect children from harm that is the result of direct negligence by DSHS investigators during the course of an investigation, such as dropping a child or negligently inflicting emotional harm of the kind J.C.W. alleges. A careful reading of the statute's statement of purpose gives no indication that when the legislature created the duty to investigate child abuse, it contemplated protecting children from all physical or emotional injuries that may come to them directly from the negligence of DSHS investigators. Because the cause of action of negligent investigation originates from the statute, it is necessarily limited to remedying the injuries the statute was meant to address.
J.C.W. claims the purpose of the statute is to protect children from all harm. J.C.W. and WSTLA Foundation argue language from chapter 26.44 RCW supports finding a wider purpose of protecting children generally. Br. of WSTLA Foundation at 7-8. For example, RCW 26.44.010 states that "[i]t is the intent of the legislature that, as a result of [reported abuse], protective services shall be made available in an effort to prevent further abuses, and to safeguard the general welfare of such children...." When this language is read in light of the passage from the same statute quoted above however, it becomes apparent that WSTLA Foundation takes this general language out of the context of the specific harms the legislature intended to remedyunnecessary violation of the integrity of the family and abuse of children within the family.
J.C.W. and WSTLA Foundation also argue that general statements of intent to protect children from other statutes support an expansive duty of care to protect children from all harm. J.C.W. and WSTLA Foundation, however, provide no support for the contention that we must look to other statutes to determine the purpose of the statute that implies the cause of action. Moreover, these general statements are usually made in the context of preventing specific abuse by parents or guardians, or for some other specific purpose. For example, RCW 13.34.020, the dependency and termination of parent-child *959 relationship statute, provides "the child's health and safety shall be the paramount concern" of that chapter. This statement is made in the context of explaining that the child's rights supersede the interest of keeping families together when determining whether or not to remove a child from a home. RCW 13.34.020. Another statute provides that "[t]he purpose of this chapter is to safeguard, protect and contribute to the welfare of the children of the state," but in the context of providing a social welfare program for children. RCW 74.13.010. The child welfare program is not directly relevant to the scope of the duty of DSHS to investigate child abuse under RCW 26.44.050. These arguments therefore do not support finding a general statutory duty of care for a claim of negligent investigation.
Here, the Court of Appeals erred when it relied on Lesley. M.W., 110 Wash.App. at 238-39, 39 P.3d 993 (citing Lesley v. Dep't of Soc. & Health Servs., 83 Wash.App. 263, 267, 921 P.2d 1066 (1996) review denied 131 Wash.2d 1026, 939 P.2d 216 (1997)). In Lesley, a day-care worker saw marks on the Lesley's 11-month-old daughter. Unable to determine whether the marks were bruises or Mongolian spots (a common birthmark of African American children), the day-care worker called DSHS. Lesley, 83 Wash.App. at 267, 921 P.2d 1066. The DSHS caseworker dismissed the parents' assertions that the marks were Mongolian spots. Lesley, 83 Wash.App. at 269, 921 P.2d 1066. The caseworker and a police officer concluded that the spots were bruises and that the child should be taken into protective custody. Lesley, 83 Wash.App. at 267, 921 P.2d 1066. Six days later, the marks were diagnosed as Mongolian spots instead of bruises, and the child was returned to her parents. Lesley, 83 Wash.App. at 271, 921 P.2d 1066.
The Lesley court held the caseworker and DSHS could be liable for negligent investigation. Lesley, 83 Wash.App. at 272, 921 P.2d 1066. In analyzing whether the caseworker had qualified immunity, the Lesley court reasoned she did not because she failed to follow established procedures when evaluating the Mongolian spots. Lesley, 83 Wash. App. at 275, 921 P.2d 1066. That court also reasoned that whether the caseworker acted reasonably was a question of fact. Lesley, 83 Wash.App. at 275, 921 P.2d 1066.
The Court of Appeals in the present case interpreted this holding from Lesley to mean DSHS has a general duty of care to act reasonably when investigating child abuse, which includes following correct procedures. M.W. 110 Wash.App. at 239, 39 P.3d 993. The Court of Appeals concluded that "[i]mplicit in the duty to investigate under RCW 26.44.050 is the duty to investigate reasonably," and that DSHS may be liable for negligent investigation when the manner of its investigation is overzealous and procedurally improper. M.W., 110 Wash.App. at 238-39, 39 P.3d 993 (citing Lesley, 83 Wash.App. at 274, 921 P.2d 1066).
This reading of Lesley confuses the analysis for qualified immunity with the scope of the duty. This reading also overlooks that the harm caused by DSHS in that case, unlike the harm alleged here, arose from an erroneous placement decision that removed the child from the home based on a biased or incomplete investigation. All other cases of negligent investigation by DSHS also involve harmful placement decisions. M.W., 110 Wash.App. at 255, 39 P.3d 993 (Morgan, J., dissenting). See, e.g., Rodriguez v. Perez, 99 Wash.App. 439, 443, 994 P.2d 874, review denied, 141 Wash.2d 1020, 10 P.3d 1073 (2000); Yonker v. Dep't of Soc. & Health Servs., 85 Wash.App. 71, 930 P.2d 958 (1997); Corbally v. Kennewick Sch. Dist., 94 Wash. App. 736, 973 P.2d 1074 (1999); Pettis v. State, 98 Wash.App. 553, 990 P.2d 453 (1999). The Court of Appeals thus erred in finding a general duty to investigate reasonably implicit in the statutory duty to investigate, instead of analyzing the stated purpose of the statute under Bennett.
Our conclusion not to expand the cause of action of negligent investigation is bolstered by our determination that DSHS has an existing common law duty of care not to negligently harm children. An expansion of the action of negligent investigation is therefore unnecessary. The legislature established the right to sue the State for common law torts when it waived sovereign immunity. Laws of 1963, ch. 159, § 2, codified at RCW *960 4.92.090 ("The state of Washington ... shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation."). The State and its subdivisions have since been held to the same general duty of care to which private individuals are heldthat of a reasonable person under the circumstances. See Keller v. City of Spokane, 146 Wash.2d 237, 243, 44 P.3d 845 (2002). Parties who suffer personal injury or property damage due to the negligence of employees of the State are able to bring suit for damages, subject to procedural rules.[5]See, e.g., Medina v. Pub. Util. Dist. No. 1 of Benton County, 147 Wash.2d 303, 53 P.3d 993 (2002) (suit brought for personal injury and loss of consortium after an automobile accident negligently caused by a county car operated by a county employee). Whether the facts of the present case are actionable at common law is not before us.
Our courts have not recognized a general tort claim for negligent investigation. The negligent investigation cause of action against DSHS is a narrow exception that is based on, and limited to, the statutory duty and concerns we discuss above. The third prong of the Bennett analysis is not satisfied here because the injuries J.C.W. alleges are outside those harms DSHS's statutory duty to investigate child abuse was designed to prevent. We therefore decline to expand the cause of action for negligent investigation.
When we examine the facts of this case in the light most favorable to J.C.W., they do not support a claim of negligent investigation because they do not give rise to finding that DSHS conducted an incomplete or biased child abuse investigation that resulted in a harmful placement decision. J.C.W. does not argue that DSHS made a harmful placement decision. Nor does J.C.W. allege that DSHS's decision to remove her from the home of her biological parents and place her with M.W. and A.W. was based on an incomplete or biased investigation. On the contrary, the record reflects that DSHS's placement decisions were beneficial to J.C.W. and based on information that was complete and accurate. Because the record does not support a claim of negligent investigation, the trial court correctly granted summary judgment on that claim.

CONCLUSION
In sum, a cause of action inferred from a statutory duty is limited by the harm the statute is meant to address. The harm addressed by the statute here is the abuse of children within the home and unnecessary interference with the integrity of the family. Therefore, a claim for negligent investigation against DSHS is available only to children, parents, and guardians of children who are harmed because DSHS has gathered incomplete or biased information that results in a harmful placement decision, such as removing a child from a nonabusive home, placing a child in an abusive home, or letting a child remain in an abusive home. We decline to expand this cause of action beyond these bounds because the statute from which the tort of negligent investigation is implied does not contemplate other types of harm. Also, based on the facts of this case, we can find no need to expand the cause of action. Because J.C.W. does not allege the type of harm the statute was meant to address, her claim for negligent investigation fails. We reverse the Court of Appeals and affirm the trial court's dismissal.
WE CONCUR: ALEXANDER, C.J., MADSEN, IRELAND, BRIDGE, OWENS, FAIRHURST, JJ.
SANDERS, J., dissenting.
The majority asserts chapter 26.44 RCW does not permit a claim against the Department of Social and Health Services (DSHS) for negligent investigation under these facts; however, I believe the majority misstates the duty owed by DSHS to avoid harming the child during its investigations and misreads precedent.
This case reviews a summary judgment. Therefore we engage in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). All facts and inferences must be considered in the light most favorable to the nonmoving *961 party. Id. Here, DSHS moved for summary judgment and the foster parents were the nonmoving party.
The home specialists who examined the 16-month-old child recall the facts in a substantially different light than the foster parents. For the purpose of this review, we must therefore rely on the recollection of the foster parents, the nonmoving party:
The first thing is they were kind of looking at [the 16-month-old child]. "Geez, do you see redness?" One would say yes; one would say no. And then they started pointing and touching the outside. And I would say it was probablyit was both of them. I think one did it first and then the other one, and they were kind of bantering back and forth.
....
And then that's when they went in and stuck their hands in and pulled apart like this.
....
.... To me there [were] two types of touching. One was the actual poking of the outer area. Not her legs but her private areas.
....
.... The other was sticking their hands inside of her and pulling her apart like so.
Clerk's Papers 227-29.
The plaintiff in a tort action must prove the defendant owed a plaintiff a duty of care. Maltman v. Sauer, 84 Wash.2d 975, 979-80, 530 P.2d 254 (1975). Here the question for review is not the existence of a duty under chapter 26.44 RCW, but the extent of that duty. We must decide whether the facts as stated above give rise to a cause of action for negligent investigation under chapter 26.44 RCW.
RCW 26.44.010 states the purpose of chapter 26.44 as follows:
The Washington state legislature finds and declares: The bond between a child and his or her parent, custodian, or guardian is of paramount importance, and any intervention into the life of a child is also an intervention into the life of the parent, custodian, or guardian; however, [where] instances of nonaccidental injury, neglect, death, sexual abuse and cruelty to children by their parents, custodians or guardians have occurred, and in the instance where a child is deprived of his or her right to conditions of minimal nurture, health, and safety, the state is justified in emergency intervention based upon verified information; and therefore the Washington state legislature hereby provides for the reporting of such cases to the appropriate public authorities. It is the intent of the legislature that, as a result of such reports, protective services shall be made available in an effort to prevent further abuses, and to safeguard the general welfare of such children.[1]
(Emphasis added.)
The legislature then defined what it meant by "protective services": "`Child protective services' means those services provided by the department designed to protect children from child abuse and neglect and safeguard such children from future abuse and neglect, and conduct investigations of child abuse and neglect reports." RCW 26.44.020(16) (emphasis added).
The majority relies upon the Bennett test to determine whether a cause of action is implied in chapter 26.44 RCW. Bennett v. Hardy, 113 Wash.2d 912, 920-21, 784 P.2d 1258 (1990) (citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 823 F.2d 1349, 1353 (9th Cir.1987)). However because the majority fails to carefully review the clear language of RCW 26.44.010, it improperly applies the third Bennett element. This third element requires us to determine whether the underlying purpose of the legislation is consistent with inferring a remedy. Id.
Where the statutory language is plain and unambiguous the meaning must first be derived from the wording of the statute itself. Only if the meaning is not clear may related statutes be used to derive meaning. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 10-12, 43 P.3d 4 (2002). The legislature opined its intent of chapter 26.44 RCW directly in RCW *962 26.44.010. It is clear from the language that the purpose of the statute is to "prevent further abuses" and "safeguard the general welfare of ... children." Thus the central purpose underlying DSHS' statutory duty to investigate allegations of child abuse is to protect children from harm. This purpose imposes a duty on DSHS to act reasonably when conducting investigations. By the same token, the statutory purpose of protection is antithetical to DSHS itself negligently inflicting harm on a child.
This is not the first time we have determined the purpose of chapter 26.44 RCW. In Tyner we stated, "RCW 26.44.050 has two purposes: to protect children and preserve the integrity of the family." Tyner v. Dep't of Soc. & Health Servs., 141 Wash.2d 68, 80, 1 P.3d 1148 (2000). I would affirm that holding here.
The majority supports its conclusion with a factual recounting of prior cases, but fails to address the holdings and underlying principles of those cases. The majority reiterates the argument made in the dissent by Judge Morgan of the Court of Appeals where he suggests the 12 Washington Court of Appeals cases addressing negligent investigation have limited liability to three factual scenarios: (1) negligently placing a child in an abusive setting; (2) negligently failing to remove a child from an abusive setting; or (3) negligently removing a child from the home of an innocent, nonabusive parent. M.W. v. Dep't of Soc. & Health Servs., 110 Wash.App. 233, 255, 39 P.3d 993 (2002) (Morgan, J., dissenting). However, this type of analysis only informs us of the factual context of the cases but does not suggest liability is necessarily limited to those facts. Typically the principle upon which tort liability is imposed is more general than any specific facts which may fall within that principle.
The majority overlooks the core predicate that in all of the previous cases, as a direct and proximate result of DSHS' investigations, a child or parent was harmed. Similarly, in the case before us, a 16-month-old child may have been harmed as the result of an investigation by DSHS.
In his dissent below, Judge Morgan discusses Babcock v. State, 116 Wash.2d 596, 809 P.2d 143 (1991). There, several young girls were placed in foster care with a man who sexually abused them. It was alleged the abuse would not have occurred had the State conducted a proper investigation. Id. at 604-06, 809 P.2d 143. In Yonker an ex-wife complained to DSHS that she suspected child abuse and DSHS took no action. Yonker v. Dep't of Soc. & Health Servs., 85 Wash.App. 71, 72-73, 930 P.2d 958 (1997). In both cases the injury was not placement, but what happened as a consequence of negligent investigations.
Also in Rodriguez the Court of Appeals was concerned with negligent investigation methods and intimidation of children alleged to have been abused. Rodriguez v. Perez, 99 Wash.App. 439, 441-42, 994 P.2d 874 (2000) (holding law enforcement owed duty similar to that owed by DSHS under RCW 26.44.050). The court in Rodriguez recognized what we clarified in Tynerthat the duty under RCW 26.44.050 "derives from the paramount importance that is placed on the welfare of the child." Rodriguez, 99 Wash. App. at 444, 994 P.2d 874; Tyner, 141 Wash.2d at 77-80, 1 P.3d 1148. Even Justice Talmadge in his Tyner dissent recognized, "the purpose of Washington's child abuse reporting laws is to protect the children, and those laws create no rights for abusers." Tyner, 141 Wash.2d at 96, 1 P.3d 1148 (Talmadge, J., dissenting).
Although the prior scenarios differ somewhat from the facts before us, our prior reasoning supports a recognition of liability when DSHS directly harms a child through negligent investigation.[2] In fact this seems an even cleaner application of the rule than the cases which preceded it.
I would recognize the fundamental duty of DSHS to not harm the child during its investigation and therefore would affirm the Court *963 of Appeals disposition, and accordingly dissent.
CHAMBERS, J., concurs.
NOTES
[1] M.W. and A.W. adopted J.C.W. subsequent to the events relevant to this case.
[2] These facts are taken partially from the Court of Appeals decision, M.W. v. Department of Social & Health Services, 110 Wash.App. 233, 246-47, 39 P.3d 993 (2002). The record contains only the second amended complaint.
[3] RCW 26.44.050 states in relevant part, "[u]pon the receipt of a report concerning the possible occurrence of abuse or neglect, ... the department of social and health services must investigate and provide the protective services section with a report in accordance with chapter 74.13 RCW, and where necessary to refer such report to the court."
[4] DSHS favors another analysis articulated in Melville v. State, 115 Wash.2d 34, 37, 793 P.2d 952 (1990). Answer of DSHS to Amicus WSTLA Foundation at 8-9 n. 2. The Melville analysis is used when determining whether to borrow a standard of care from a statute. Melville, 115 Wash.2d at 36-37, 793 P.2d 952. Here, the Bennett analysis is more appropriate because it is used when the statute itself gives rise to the duty and the court must imply a cause of action. Bennett, 113 Wash.2d at 920-21, 784 P.2d 1258.
[5] See RCW 4.92.110.
[1] The majority conveniently fails to quote the above italicized portion of RCW 26.44.010.
[2] I agree with the majority that the Court of Appeals' reliance on Lesley may not be justified as the Lesley court analyzes the existence of qualified immunity and not the scope of duty. Lesley v. Dep't of Soc. & Health Servs., 83 Wash. App. 263, 273-77, 921 P.2d 1066 (1996).