[No. 29655-1-II.   Division Two.   May 4, 2004.]

*In the Matter of the Parentage of* J.M.K., ET AL.

TERESA BROCK, *Respondent,* v. MICHAEL J. KEPL, *Appellant.*

*Christopher M. Constantine* (of *of Counsel, Inc., P.S.*), for appellant.

*Daniel W. Smith* and *Boyd S. Wiley* (of *Campbell Dille Barnett Smith & Wiley*), for respondent.

HOUGHTON, J. — Michael Kepl appeals a summary judgment order establishing his parentage of J.M.K. and D.R.K. Because Washington's artificial insemination statute, former RCW 26.26.050(2) (2000) (repealed 2002),[1] precludes naming Kepl as J.M.K. and D.R.K.'s father, we reverse.

## FACTS[2]

Kepl and Teresa Brock were involved in a romantic relationship in 1989, and again from 1992 to late 2000 or early 2001. At some point in their relationship, Brock told

---

[1] In 2002, the legislature repealed RCW 26.26.040, RCW 26.26.050, and RCW 26.26.060. The applicable statutes for establishing parentage in nontraditional reproduction cases are now RCW 26.26.705 through RCW 26.26.740. RCW 26.26.700.

[2] We derive the facts from the parties' declarations, affidavits, and pleadings submitted below.

Kepl that she could not have a child by "natural" means. Clerk's Papers (CP) at 129. She asked him to donate semen for artificial insemination, which he gave to her physician. The physician artificially inseminated Brock, leading to her giving birth to J.M.K. on December 30, 1998, and D.R.K. on October 27, 2001.

When Brock gave birth to J.M.K., she was still in her relationship with Kepl. Kepl signed a paternity affidavit for J.M.K. and maintained regular contact with him from his birth until shortly before this parentage action. Kepl also purchased a life insurance policy and listed J.M.K. as the beneficiary.

Brock gave birth to D.R.K. after her relationship with Kepl ended. Kepl did not sign a paternity affidavit for D.R.K. nor did Kepl have more than limited contact with him. According to Kepl, he was not aware that Brock was artificially inseminated a second time with his previously donated sperm.

Before D.R.K.'s birth and until shortly thereafter, Kepl paid $400-$650 a month into a joint account with Brock. But after Kepl's wife became aware of his relationship with Brock in January 2002, Kepl stopped paying.

On February 20, 2002, Brock filed an action under former RCW 26.26.060 (2000)[3] seeking to establish Kepl as the children's father. Brock asked the court to: (1) put Kepl's name on both of the children's birth certificates; (2) establish a parenting plan; and (3) award back and future child support, attorney fees, and costs. The court appointed a guardian ad litem, who recommended blood testing to establish Kepl's paternity.

Kepl responded by denying paternity and by disputing Brock's maternity. He moved to dismiss the action. In order to determine whether Brock was the children's mother, he

---

[3] Former RCW 26.26.060 involved the determination of the father and child relationship. It identified who may bring an action and when the action may be brought.

sought her medical records and blood tests.[4] Kepl also argued that former RCW 26.26.050(2) did not allow him to be named as the children's father because he and Brock never agreed in writing that he would be the legal father of offspring conceived through artificial insemination.

Brock moved for a protective order to prevent Kepl from reviewing her health history. The trial court issued a protective order based on Brock's privacy rights. The court also ordered Kepl to submit to blood testing to determine both children's parentage.

Brock moved for summary judgment on J.M.K.'s parentage. She argued that Kepl signed a paternity affidavit under former RCW 26.26.040 (2000)[5] and acknowledged that he was J.M.K.'s father. After blood testing established Kepl's paternity of both J.M.K. and D.R.K., Brock filed a second summary judgment motion to establish Kepl as the father of both children.

In response to Brock's summary judgment motions, Kepl argued, inter alia, that former RCW 26.26.050(2) protected him from a paternity action.

A pro tem superior court commissioner granted Brock's summary judgment motion and established Kepl's pater-

---

[4] In his response to the parentage action, Kepl argued that Brock was not the natural mother of the children because she could have been impregnated with a "fertilized embryo using donated eggs." CP at 67. He did not advance this argument below nor does he on appeal.

[5] Former RCW 26.26.040, stated in part:

(1) A man is presumed to be the natural father of a child for all intents and purposes if:

. . . .

(e) He acknowledges his paternity of the child pursuant to RCW 70.58.080 or in a writing filed with the state registrar of vital statistics, which shall promptly inform the mother of the filing of the acknowledgment, if she does not dispute the acknowledgment within a reasonable time after being informed thereof, in a writing filed with the state registrar of vital statistics. An acknowledgment of paternity under RCW 70.58.080 shall be a legal finding of paternity of the child sixty days after the acknowledgment is filed with the center for health statistics unless the acknowledgement is sooner rescinded or challenged. After the sixty-day period has passed, the acknowledgment may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenger.

nity of J.M.K. and D.R.K.[6] The commissioner focused on Kepl and Brock's consensual sexual relationship, rather than on Brock's having conceived through artificial insemination.

Kepl moved to revise the commissioner's ruling and to lift the protective order. The superior court denied Kepl's motion to revise, but it partially lifted the protective order to allow Kepl to determine whether Brock could work for purposes of a child support determination.

Kepl appeals.

## ANALYSIS

### Artificial Insemination

Kepl seeks protection under former RCW 26.26.050, the artificial insemination statute. The statute provided in part,

> The donor of semen provided to a licensed physician for use in artificial insemination of a woman other than the donor's wife is treated in law as if he were not the natural father of a child thereby conceived *unless the donor and the woman agree in writing that said donor shall be the father. The agreement must be in writing and signed by the donor and the woman.* The physician shall certify their signatures and the date of the insemination and file the agreement with the registrar of vital statistics, where it shall be kept confidential and in a sealed file.

Former RCW 26.26.050(2) (emphasis added).

Kepl argues that he gave his semen to a licensed physician to artificially inseminate a woman other than his wife and that he and Brock did not agree in writing that he would be the legal or natural father of the children. He contends that the trial court erred in determining that he was J.M.K. and D.R.K.'s father.

---

[6] A superior court commissioner also ordered Kepl to pay child support and part of Brock's attorney fees. The superior court denied Kepl's motion to revise these rulings.

■ ■ We review a summary judgment order de novo, taking the facts and reasonable inferences in the light most favorable to the nonmoving party in order to determine whether material issues of fact remain. CR 56(c); *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 595, 70 P.3d 954 (2003). We review statutes de novo. *J.A. v. State*, 120 Wn. App. 654, 658, 86 P.3d 202 (2004).

■ Former RCW 26.26.050(2) unambiguously provided that when a donor provides semen to a licensed physician for the artificial insemination of a woman not his wife, the donor will not be the child's natural father, subject to one exception: If the mother and the donor agree in a writing, that is certified by the physician and filed under the provisions of former RCW 26.26.050(2) and (3), the donor shall be named the legal father.

■ Here, Brock and Kepl agree that Kepl donated semen to Brock's licensed physician. Brock does not dispute that J.M.K. and D.R.K. were conceived through artificial insemination.[7] Nevertheless, Brock argues that Kepl's signature on J.M.K.'s paternity affidavit sufficiently establishes Kepl's legal parentage for J.M.K. according to the paternity presumption statute, former RCW 26.26.040. In the alternative, she argues that the paternity presumption establishes Kepl's written consent to be J.M.K.'s legal father under former RCW 26.26.050(2).

Because former RCW 26.26.050(2) protected semen donors and because Kepl donated semen, the proper inquiry for the parentage of J.M.K. and D.R.K. begins with the artificial insemination statute. Brock and Kepl did not agree in writing that Kepl, by donating semen, would become the children's legal father. Nor is there any evidence in the record from which we could infer such a writing. Thus, Brock's arguments fail.

---

[7] In her declaration submitted with her petition to establish Kepl's parentage, Brock states, "We were able to be artificially inseminated with both of our children." CP at 6.

Because Kepl is not legally J.M.K. and D.R.K.'s natural father according to former RCW 26.26.050(2),[8] we reverse the trial court's order on child support and attorney fees. Finally, as Brock does not prevail, we decline to award her requested attorney fees. RAP 18.1.

MORGAN, A.C.J., and SEINFELD, J. Pro Tem., concur.

Review granted at 153 Wn.2d 1002 (2005).

---

[8] We do not address Kepl's remaining assignments of error.