# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| BRANDON K. ROE and TERI L. ROE, Husband and Wife, | No.  47987-7-II |
| Appellants, | |
| v. | |
| STATE OF WASHINGTON and DEPARTMENT OF SOCIAL & HEALTH SERVICES, STEPHANIE FROST and "JOHN DOE" FROST, individually and the marital community thereof, ANITA TEETER and "JOHN DOE" TEETER, individually and the marital community thereof, DEBBIE MARKER and "JOHN DOE" MARKER, individually and the marital community thereof, VICKY PAYTON and "JOHN DOE" PAYTON, individually and the marital community thereof, COWLITZ COUNTY, a Washington State County, and the COWLITZ COUNTY SHERIFF'S DEPARTMENT, PATRICIAL SCHALLERT and "JOHN DOE" SCHALLERT, individually and the marital community thereof, MARC GILCHRIST and "JANE DOE" GILCHRIST, individually and the marital community thereof, DEBORAH K. HALL, and "JOHN DOE" HALL, individually and the marital community thereof, "JOHN DOE" SOCIAL WORKER and "JANE DOE" SOCIAL WORKER, individually and the marital community thereof, | UNPUBLISHED OPINION |
| Respondents. | |

SUTTON, J. — This appeal arises from the dismissal of a lawsuit arising from the out-of-home placement of N.R.,[1] the minor daughter of Brandon and Teri Roe. N.R. was removed from the home pending an investigation of child abuse and neglect against the Roes, resulting in a third degree assault of a child charge against Teri, of which she was acquitted. The Roes filed civil claims against the State and Cowlitz County for damages resulting from N.R.'s out-of-home placement. The Roes appeal the superior court's order granting summary judgment dismissal with prejudice of the claims against the State and the County. The superior court properly granted summary judgment because (1) the Roes failed to establish there was an incomplete or biased investigation, (2) neither the State nor the County acted outrageously, and (3) probable cause existed as a matter of law to support the third degree assault of a child charge against Teri Roe. We affirm the superior court's order granting summary judgment and dismissing the Roes's claims with prejudice.

FACTS

N.R. was born on December 1, 2006, and tested positive for opiates and amphetamines at birth. N.R. was adopted by her aunt and uncle, Brandon[2] and Teri Roe. The Roes also have several other children.

On May 11, 2010, Heather Bonnell, N.R.'s long time babysitter, brought N.R. to the Department of Social and Health Services' Child Protective Services (CPS) office in Kelso,

---

[1] We refer to N.R. by her initials to protect her privacy.

[2] We refer to parties with the same last name by their first names to avoid confusion; no disrespect is intended.

Washington. N.R. had extensive bruising on her nose, ear, arm, and back. She also had a scratch under her eye.

Based on the severity of the bruising N.R. was placed into protective custody by the Cowlitz County Sheriff's Office. The Roes voluntarily agreed to place N.R. in an out-of-home placement with a couple of their choosing, Julie Hoffman, a former foster parent for N.R, and her husband, Eric Kindvall. On May 13, 2010, the Roes and CPS entered into a Voluntary Placement Agreement for N.R., agreeing to N.R.'s out-of-home placement. The Voluntary Placement Agreement remained in effect until July 30, 2010.

During the investigation, social workers and detectives compiled the following information:

1. Bonnell's statement that N.R. told her Teri had caused her injuries;

2. Statements from Teri's daughter Nicole and two of Nicole's boyfriends alleging that Teri abused N.R.;

3. Statements from the Roes alleging that N.R.'s injuries were caused by their new puppy and that N.R. had poor balance and problems with her equilibrium;

4. Reports that Bonnell had an unhealthy obsession with N.R., was telling people Teri abused N.R., and was telling people N.R. was going to live with her;

5. A report from a medical expert stating that N.R.'s injuries were "very concerning for physical abuse" and the bruising on N.R.'s ear was "nearly diagnostic of abuse";[3]

6. A report from N.R.'s physician stating that N.R. did not have problems with abnormal bruising or her equilibrium;

7. Photographs documenting the bruising on N.R.'s face, ears, arm, and back;

---

[3] Clerk's Papers at 396.

8. A computer voice stress analysis of Teri which indicated deception when she denied causing N.R.'s injuries.

On July 14, 2010, Teri was arrested for third degree assault of a child based on a detailed probable cause statement that referenced the initial CPS report, the injuries observed on N.R.'s body, statements from witnesses and experts, and the Roes's denials and alternative explanations for N.R.'s injuries. The superior court then issued a no contact order prohibiting Teri from contacting N.R. On July 27, 2010, CPS filed a dependency petition[4] for N.R. In September 2011, Teri was acquitted of the criminal charge. The superior court also removed the no contact order between Teri and N.R.

In November 2011, Teri filed a motion to dismiss the dependency action. On November 19, the juvenile court denied the motion to dismiss the dependency. However, the juvenile court ordered increased visitation between N.R. and her family, including visitation with Teri.

On March 7, 2012, the juvenile court entered an order placing N.R. with the Roes. On May 16, the juvenile court dismissed the dependency.

---

[4] When CPS takes a child into protective custody, CPS is required to set a shelter care hearing before the juvenile court within seventy-two hours. RCW 13.34.065. At the shelter care hearing, the juvenile court determines whether the child will return home while a dependency action is pending. RCW 13.34.065. If dependency is disputed by either of the parents, CPS is required to set a fact finding hearing no later than seventy-five days after the filing of a dependency petition, unless exceptional reasons exist for a continuance. RCW 13.34.070(1). Here, because the Roes and CPS entered into a Voluntary Placement Agreement which extended until July 2010, the Roes waived a shelter care hearing until CPS filed a dependency action. RCW 13.34.065.

No. 47987-7-II

After the juvenile court dismissed the dependency, the Roes filed a lawsuit for damages against the State and the County.[5] The State and the County removed the case to federal district court based on the Roes's federal civil rights claims. The federal district court granted the State's and the County's motions for summary judgment on the Roes's federal civil rights claims. The federal district court then remanded the Roes's state claims for negligent investigation, negligent training/supervision, outrage, trespass, and malicious prosecution back to Thurston County Superior Court. The superior court granted the State's and the County's motions for summary judgment and dismissed all the Roes's state law claims with prejudice. The Roes appeal the dismissal of their state claims for negligent investigation, outrage, and malicious prosecution.

ANALYSIS

The Roes argue that CPS and Cowlitz County conducted a negligent investigation resulting in a harmful placement decision. The Roes also argue that the State's and County's actions constituted outrage and malicious prosecution. Here, the Roes fail to establish genuine issues of material facts as to all the elements of their claims. Therefore, the superior court properly granted the State's and the County's motions for summary judgment. We affirm the superior court's order granting summary judgment and dismissing the Roes's claims with prejudice.

I. STANDARDS OF REVIEW

We review a superior court's order granting summary judgment de novo. *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 595, 70 P.3d 954 (2003). We view the evidence in the

---

[5] The Roes also filed claims against numerous individually named defendants involved in the investigation and placement. The claims against the individually named defendants were also dismissed, and the Roes do not appeal those portions of the superior court's orders.

5

light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *McCarthy v. Clark County*, 193 Wn. App. 314, 328, 376 P.3d 1127, *review denied*, 186 Wn.2d 1018 (2016). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "'A material fact is one that affects the outcome of the litigation.'" *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164-65, 273 P.3d 965 (2012) (quoting *Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005)). If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment. *McCarthy*, 193 Wn. App. at 328.

## II. NEGLIGENT INVESTIGATION CLAIM

RCW 26.44.050 provides that CPS and law enforcement must investigate reports of abuse or neglect of a child:

> [U]pon the receipt of a report concerning the possible occurrence of abuse or neglect, the law enforcement agency or the department of social and health services must investigate and provide the protective services section with a report . . . and where necessary to refer such report to the court.

Based on CPS's statutory duty to investigate allegations of child abuse or neglect, parents have an implied cause of action against CPS and law enforcement for negligent investigation resulting in a harmful placement decision. *M.W.,* 149 Wn.2d at 595. This cause of action extends to parents who are suspected of abusing their children. *Tyner v. State Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 81, 1 P.3d 1148 (2000). However, a negligent investigation cause of action is a "narrow exception" to the rule that there is no general tort claim for negligent investigation. *M.W.*, 149 Wn.2d at 601. A negligent investigation claim is available only when CPS or law

enforcement conducts an incomplete or biased investigation that "resulted in a harmful placement decision." *M.W.*, 149 Wn.2d at 601.

The Roes allege that the State and the County conducted an incomplete and biased investigation because they relied entirely on the statements made by Bonnell—a biased and unreliable witness. But the investigation was not based entirely on Bonnell's statements. As outlined in the facts above, investigators compiled information from numerous sources during their investigation including the Roes, other witnesses, neutral medical and expert witnesses, and direct observation of the injuries to N.R. Therefore, the investigation was not incomplete. And the Roes have not presented any evidence establishing that the investigators were biased. Accordingly, the Roes have not established a genuine issue of material fact as to whether there was an incomplete or biased investigation. The superior court properly granted summary judgment as to the Roes's negligent investigation claim.

### III. OUTRAGE CLAIM

To recover for outrage, a plaintiff must prove the following elements: "'(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress.'" *Keates v. City of Vancouver*, 73 Wn. App. 257, 263, 869 P.2d 88 (1994) (internal quotation marks omitted) (quoting *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989)). The alleged outrageous conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Keates*, 73 Wn. App. at 263 (emphasis omitted) (internal cites and quotation marks omitted) (quoting *Dicomes*, 113 Wn.2d at 630). Although the question of whether conduct is sufficiently outrageous is ordinarily left to a

jury, the trial court must first "determine if reasonable minds could differ on whether the conduct was so extreme as to result in liability." *Keates*, 73 Wn. App. at 263.

Here, the State and the County acted to protect N.R. from any further harm or injury. Their actions were based on observations of extensive bruising on multiple areas of N.R.'s body. Their actions cannot be considered to be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Keates*, 73 Wn. App. at 263 (emphasis omitted) (internal cites and quotation marks omitted) (quoting *Dicomes*, 113 Wn.2d at 630). Accordingly, the Roes have failed to establish a genuine issue of material fact as to whether the State's and the County's actions were outrageous, and the superior court properly granted the motions for summary judgment as to the Roes's outrage claim.

## IV. MALICIOUS PROSECUTION CLAIM

Malicious prosecution actions are not favored in law. *Rodriguez v. City of Moses Lake*, 158 Wn. App. 724, 728-29, 243 P.3d 552 (2010). "[A]n individual, 'who acts in good faith shall not be subjected to damages merely because the accused is not convicted.'" *Rodriguez*, 158 Wn. App. at 729 (internal quotation marks omitted) (quoting *Hanson v. City of Snohomish*, 121 Wn.2d 552, 557, 852 P.2d 295 (1993)).

To establish a claim for malicious prosecution, the plaintiff must prove:

"(1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution."

*Rodriguez*, 158 Wn. App. at 729 (quoting *Clark v. Baines*, 150 Wn.2d 905, 911, 84 P.3d 245 (2004)). The existence of probable cause is a complete defense to malicious prosecution. *Rodriguez*, 158 Wn. App. at 729. "'Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a *[person] of reasonable caution* in a belief that an offense has been or is being committed.'" *Rodriguez*, 158 Wn. App. at 729 (quoting *Bender v. City of Seattle*, 99 Wn.2d 582, 597, 664 P.2d 492 (1983)). Probable cause may be established as a matter of law where unrefuted evidence shows that a full and fair disclosure was made of all known material facts before the criminal proceedings. *Rodriguez*, 158 Wn. App. at 730.

Here, the probable cause statement disclosed the Roes's alternative explanations for N.R.'s injuries and the reasons the officer believed that the charge was still substantiated. Based on the information about the extent of N.R.'s injuries and the other witness statements, a person of reasonable caution would believe that an assault of a child had occurred. The Roes's contrary explanation for N.R.'s injuries "did not negate probable cause[,] rather, it was defense evidence for the fact finder to consider and assign weight." *Rodriguez*, 158 Wn. App. at 730. Thus, the probable cause statement supporting the third degree assault of a child charge was based on a full and fair disclosure of the material facts. And the State and the County established probable cause as a matter of law. Therefore, the State and the County established a complete defense to malicious prosecution and summary judgment was proper.

9

No. 47987-7-II

The Roes have failed to establish any genuine issues of material fact as to their claims for negligent investigation and outrage, and the State and the County have established a complete defense to the claim of malicious prosecution. Therefore, summary judgment was proper. We affirm the superior court's order granting summary judgment and dismissing the Roes's claim with prejudice.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, J.

LEE, J.