**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUDITH COX, individually and as
Personal Representative of the estate
of C. J. P., and estate of B. T. P. and
CHARLES COX, individually and as
Personal Representatives of the
estate of C. J. P. and estate of
B. T. P.,

*Plaintiffs-Appellants/*
*Cross-Appellees*,

v.

STATE OF WASHINGTON,
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES; FOREST
JACOBSON; RANDY STEPHENSON;
JANE WILSON; BILLIE REED-LYYSKI,
*Defendants-Appellees/*
*Cross-Appellants*.

Nos.15-35964
15-35980

D.C. No.
3:14-cv-05923-
RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted December 4, 2017
Seattle, Washington

Filed January 10, 2019

Before: Michael Daly Hawkins and Morgan Christen, Circuit Judges, and Leslie E. Kobayashi,[*] District Judge.

Opinion by Judge Kobayashi

**SUMMARY**[**]

**Civil Rights**

The panel affirmed a grant of summary judgment in favor of social workers and reversed the dismissal of negligence claims against Washington's Department of Social and Health Services, and remanded, in an action arising from the murder of two young boys by their father during a social-worker-supervised visit.

The amended complaint alleged a 42 U.S.C. § 1983 claim against the social workers for disregarding facts showing that the father presented a serious risk of harm to the boys, as well as negligence claims against the Department for its failure to investigate and monitor the father prior to and during the visits, and failure to train.

The panel held that viewing the record in the light most favorable to the plaintiffs, there was insufficient evidence to show that the social workers recognized, or should have

---

[*] The Honorable Leslie E. Kobayashi, United States District Judge for the District of Hawai`i, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

recognized, an objectively substantial risk that the father would physically harm his sons. As the social workers did not act with deliberate indifference to the boys' liberty interest, the district court did not err in concluding that the social workers were entitled to qualified immunity.

Addressing the negligence claims, the panel held that the Department of Social and Health Services had a duty to investigate in order to reasonably ensure that a child is not placed in an abusive situation. The panel held that material issues of fact existed regarding whether the Department used reasonable care to avoid placing the boys in harm's way, including: (1) determining the visitation location; (2) facilitating the February 5, 2012 visitation; and (3) training its social workers to conduct visitations. There also existed material issues of fact as to whether the Service's actions proximately caused the boys to be placed in harm's way.

---

**COUNSEL**

Ted Buck (argued), Evan Bariault, Anne M. Bremner, Frey Buck P.S., Seattle, Washington, for Plaintiffs-Appellants/ Cross-Appellees.

Peter John Helmberger (argued), Assistant Attorney General; Robert W. Ferguson, Attorney General; Office of the Attorney General,  Tacoma, Washington; for Defendants-Appellees/Cross-Appellants.

---

**OPINION**

KOBAYASHI, District Judge:

This appeal arises from the gruesome murder of two young boys by their father during a social-worker-supervised visit during dependency proceedings brought by the State of Washington's Department of Social and Health Services ("DSHS"). One set of grandparents, Judith Cox and Charles Cox ("Coxes"), subsequently sued the social workers under 42 U.S.C. § 1983, and DSHS for negligence. The Coxes appeal the adverse grant of summary judgment in favor of the social workers and DSHS. On cross-appeal, DSHS challenges the conclusion that, in placement decisions, Washington state law imposes a duty to conduct investigation necessary to avoid placing a child in an abusive or dangerous situation. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the grant of summary judgment in favor of the social workers based on qualified immunity and the conclusion that, under Washington state law, those making placement decisions have a duty to reasonably ensure a child is not placed in an abusive situation. We reverse as to the negligence claims against DSHS, and remand for further proceedings.

## I.  BACKGROUND

The following facts are not in dispute. In December 2009, Susan Powell disappeared from the Utah home she shared with her husband, Joshua Powell and their two boys. Joshua, the lead suspect in Susan's disappearance, subsequently moved with the two boys to his father Stephen Powell's home in Washington. On August 25, 2011, Washington authorities—acting on information from Utah

authorities investigating Susan's disappearance—conducted a search of Stephen's home. Washington authorities confiscated fifteen computers that, when examined, were found to contain child pornography and evidence of Stephen's obsession with Susan. Stephen was arrested, and the two boys were removed from the home and placed under DSHS's care.

On September 28, 2011, the Superior Court of Washington, County of Pierce, Juvenile Court ("the Dependency Court") issued orders placing the two boys in the custody of DSHS; authorizing placement with the Coxes; allowing Joshua weekly visits with the two boys under supervision by a DSHS-approved provider; and prohibiting Joshua from either discussing pending litigation with the boys or making disparaging remarks about the Coxes. Pursuant to these orders, one of the social workers submitted an initial visiting plan to the Dependency Court that recommended the weekly supervised visits take place in DSHS's Division of Child and Family Services ("DCFS") offices or another preapproved DCFS location.

Following an initial review, the Dependency Court found the two boys were dependent and ordered the boys continue to be placed with the Coxes but maintained weekly visits with their father. The Dependency Court also ordered that visitations could be expanded if the parties agreed and that Joshua undergo a psychological evaluation and parenting assessment. In November 2011, DSHS changed the location of the boys' visits from a DCFS facility to a residence Joshua had established separate and apart from his father. The change was noted in the guardian ad litem's report, filed with the Dependency Court on January 6, 2012.

Psychologist James Manley, Ph.D., evaluated Joshua between October 2011 and January 2012. As part of his evaluation, Dr. Manley assessed Joshua during visitations occurring both at a DCFS location and Joshua's newly-established residence. Dr. Manley's initial report registered concerns about some of Joshua's behaviors but concluded that supervised visitations should continue. In January 2012, Dr. Manley drafted an addendum to his report that included a review of 400 pornographic images collected from Stephen's computer. Joshua's potential connection to these images led Dr. Manley to conclude "he may not presently be a stable and appropriate resource for his children." Dr. Manley referred Joshua to a psychosexual evaluation and recommended no "additional or change of visit structure."

The Dependency Court held its second review shortly thereafter. At this hearing, the Dependency Court denied Joshua's motion to have the boys returned to him or placed with his pastor. After reviewing reports from Dr. Manley, the guardian ad litem, and social workers, the Dependency Court ordered visitation to continue twice a week for three hours. The boys continued to live with the Coxes.

On February 5, 2012, the visitation supervisor—a social worker who is not a defendant in this case—brought the boys to Joshua's newly-established residence for a scheduled visit. As they had done on prior visits, the boys, anxious to see their father, ran into Joshua's house ahead of the visitation supervisor. Joshua locked the door to prevent the visitation supervisor from entering the home, and proceeded to bludgeon both boys to death, set the house on fire, and kill himself.

The Coxes' lawsuit seeks damages from the social workers, Forest Jacobson, Randy Stephenson, Jane Wilson, and Billie Reed-Lyyski, as well as DSHS. The Coxes' original complaint was filed solely against DSHS, and was superseded by their amended complaint, which added the social workers as defendants. The amended complaint alleges a 42 U.S.C. § 1983 claim against the social workers for disregarding facts showing that Joshua presented a serious risk of harm to the boys, as well as negligence claims against DSHS for its failure to investigate and monitor Joshua prior to and during the visits, and failure to train.

The district court granted the defendants' motion for summary judgment and concluded that the social workers had absolute immunity or, alternatively, qualified immunity from the Coxes' § 1983 claims. As to DSHS, the district court found that DSHS did not fail to provide material information about Joshua to the Dependency Court, that the Dependency Court's February 1, 2012 order was a superseding, intervening cause that precluded liability for the deaths, and that DSHS did not negligently facilitate the fatal visit. The district court also found that, under state law and in placement decisions, DSHS has a duty to investigate in order to reasonably ensure that a child is not placed in an abusive situation. This appeal and cross-appeal followed.

## II. STANDARD OF REVIEW

We review *de novo* an order granting summary judgment, applying the same standard as the district court. *Howard v. City of Coos Bay*, 871 F.3d 1032, 1038 n.1 (9th Cir. 2017). Whether a public official is entitled to immunity and the type of that immunity are questions of law also reviewed *de novo*. *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237

F.3d 1101, 1106 (9th Cir. 2001) (citing *Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103 (9th Cir. 1987)).

## III.    DISCUSSION

### A.  Liability of the Individual Social Workers under § 1983

#### 1.  Absolute Immunity

We turn first to whether the district court properly concluded that the social workers were entitled to absolute immunity with regard to their reports to the Dependency Court and supervision of Joshua's visits with the two boys. "Absolute immunity from private lawsuits covers the official activities of social workers only when they perform quasi-prosecutorial or quasi-judicial functions in juvenile dependency court." *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1115 (9th Cir. 2017) (citing *Miller v. Gammie*, 335 F.3d 889, 898 (9th Cir. 2003) (en banc)). Absolute immunity is available only if the social worker's "activity or 'function' . . . was . . . part and parcel of presenting the state's case as a generic advocate." *Id.* "[S]ocial workers are not afforded absolute immunity for their investigatory conduct, discretionary decisions or recommendations." *Tamas v. Dep't of Soc. & Health Servs., State of Wash.*, 630 F.3d 833, 842 (9th Cir. 2010) (citing *Beltran v. Santa Clara Cty.*, 514 F.3d 906, 908–09 (9th Cir. 2008); *Miller*, 355 F.3d at 898).

Viewing the record in the light most favorable to the Coxes, the visitation location was within the social workers' discretion. There is insufficient evidence that the Dependency Court required the boys' visits to take place in Joshua's home. None of the Dependency Court's rulings,

oral and written, dictated the visitation location.  Thus, the district court erred in concluding that the social workers were entitled to absolute immunity.

## 2.  Qualified Immunity

Whether qualified immunity shields the social workers from liability is a closer question.  We must examine "(1) whether the facts, taken in the light most favorable to the party asserting the injury, show that the [social workers'] conduct violated a constitutional right and (2) if so, whether the right was clearly established, such that a reasonable official would understand that his conduct violated that right."  *Id.* (citing *Conn v. City of Reno*, 572 F.3d 1047, 1061 (9th Cir. 2009)).  Because we conclude that the social workers' conduct did not violate a constitutional right, we need not consider the second prong.

Where children are in state custody, the Fourteenth Amendment's substantive due process clause protects their liberty interest "in social worker supervision and protection from harm inflicted by [a third party]."  *Id*. (citing *Carlo v. City of Chino*, 105 F.3d 493, 501 (9th Cir. 1997); *Campbell v. Burt*, 141 F.3d 927, 931 n.2 (9th Cir. 1998)).

"To violate due process, state officials must act with such deliberate indifference to the liberty interest that their actions 'shock the conscience.'  Conduct that 'shocks the conscience' is deliberate indifference to a known or so obvious as to imply knowledge of, danger."  *Tamas*, 630 F.3d at 844 (footnote, citations, and some internal quotation marks omitted).  As applied to children in state custody, deliberate indifference "requires a showing of an objectively substantial risk of harm and a showing that the officials were

subjectively aware of facts from which an inference could be drawn" that such a risk existed and that "either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference." *Id.* at 845.

The Coxes argue that the social workers disregarded facts that would compel an inference that there existed an objectively substantial risk that Joshua would physically harm his two sons. Specifically, the Coxes rely on several sources—Joshua's sister, Jennifer Graves, law enforcement officials, and the Coxes—who told the social workers about their specific concerns that Joshua would physically harm the boys. The district court discounted such evidence as mere hunches, gut feelings, and speculations that were not supported by "superior knowledge" about what Joshua might do.

While we disagree with the district court's characterization of the evidence, we recognize how difficult it is for social workers to sift through safety fears and concerns, and to make reasoned and expeditious judgments about the risk of harm. In hindsight, family members' concerns about Joshua physically harming the two boys were heartbreakingly prescient. But entitlement to qualified immunity turns on whether the facts known at the time reasonably revealed this terrible risk. Regrettably, the facts did not. The initial visiting plan identified a potential safety issue related to the risk that Joshua might flee with the two boys, but not that he might cause them serious physical harm. Next, the reports by the Coxes, Joshua's sister and law enforcement expressed only generalized (albeit strongly voiced) fears about Joshua harming his sons. Further, the guardian ad litem reported that Joshua had a strong bond with

the two boys and that the visits were going well. Lastly, while the two boys ran into their father's house ahead of the visitation supervisor on at least nine occasions prior to the final, fatal visit, the children's actions reasonably could be interpreted as indications that they were not afraid of and were excited to see their father, as opposed to indications of a risk of physical harm. Viewing the record in the light most favorable to the Coxes, there is insufficient evidence to show that the social workers recognized, or should have recognized, an objectively substantial risk that Joshua would physically harm his sons. As the social workers did not act with deliberate indifference to the boys' liberty interest, the district court did not err in concluding that the social workers were entitled to qualified immunity.

## B. Negligence Claims

As with a child placed in a foster or prospective adoptive home, DSHS is the "custodian and caretaker" of a dependent child who has been removed from his biological parent's custody and subject to court-ordered supervised visitations with the biological parent. The Coxes presented multiple theories of negligence against DSHS that can be aggregated into two different groups. The first group involves actions occurring before the issuance of the Dependency Court's February 1 order, and includes claims that DSHS failed to use reasonable care while: (1) investigating and collecting information about Joshua's potential for abusive behavior;[1]

---

[1] We emphasize that the Coxes did not plead a "negligent investigation" claim. Under Washington law, there is no "general tort claim for negligent investigation[,] [and a] negligent investigation cause of action against DSHS is a narrow exception that is based on, and limited to," the scope of Wash. Rev. Code § 26.44.050. *M.W. v. Dep't of Soc. &*

and (2) determining Joshua's visitation duration and location. The second group involves actions occurring after or unrelated to the issuance of the Dependency Court's February 1 order, and includes claims that DSHS failed to use reasonable care while: (1) facilitating the February 5, 2012 visitation; and (2) training its social workers to conduct visitations.

Under Washington law, a negligence action requires proof of four elements: existence of a duty; breach of the duty; a resulting injury; and proximate causation between the breach and the resulting injury. *Michaels v. CH2M Hill, Inc.*, 257 P.3d 532, 542 (Wash. 2011).

---

*Health Servs.*, 70 P.3d 954, 960 (Wash. 2003) (en banc). Section 26.44.050 states, in pertinent part:

> Except as provided in [Wash. Rev. Code] 26.44.030(11), upon the receipt of a report concerning the possible occurrence of abuse or neglect, the law enforcement agency or the department [of social and health services] must investigate and provide the protective services section with a report in accordance with chapter 74.13 [Wash. Rev. Code], and where necessary to refer such report to the court.

Wash. Rev. Code § 26.44.050. Thus, "a claim for negligent investigation against DSHS is available only to children, parents, and guardians of children who are harmed because DSHS has[, in response to report of possible abuse or neglect,] gathered incomplete or biased information that results in a harmful placement decision." *M.W.*, 70 P.3d at 960. The Coxes do not allege a negligent investigation claim pursuant to § 26.44.050; they merely rely on DSHS's failure to use reasonable care in its investigation of this case as one of the ways in which DSHS breached the duty of care it owed the boys because of its special relationship with the boys. *See infra*.

### 1.   Duty of Care Owed to the Boys

On cross-appeal, DSHS contends that the district court erred in concluding that, under Washington law, DSHS owed the boys a duty of care to reasonably ensure it did not place the boys in a dangerous or abusive situation.  It is wrong.

The threshold determination in a negligence action is whether a defendant owes a duty of care to the plaintiff.  To be actionable, the duty must be one owed to the injured plaintiff, and not one owed to the public in general.  "While there is generally no duty to prevent a third person from intentionally harming another, a duty arises when a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct." *H.B.H. v. State*, 429 P.3d 484, 492 (Wash. 2018) ("*H.B.H. II*") (citations and internal quotation marks omitted). A duty to prevent intentional harm by a third party arises where the defendant has either: (1) a special relationship with the third party, such that the defendant has a duty to control the third party's conduct; or (2) a special relationship with the victim, such that the defendant has a duty to protect the victim.  *Id.* (citations omitted).  The second type of special relationship, which the Supreme Court of Washington has described as an "entrustment for the protection of a vulnerable victim," *id.* at 494 (citation omitted), is relevant to the Coxes' claims against DSHS.

In *H.B.H. II*, the Supreme Court of Washington held that a special relationship exists between DSHS and the dependent children it places in foster homes.  *Id.* at 496.  The children in that case sued the State of Washington, claiming "its negligence in failing to investigate or take other protective

action . . . allowed the[ir] [foster parents] to abuse them." *Id.* at 488.  The Supreme Court of Washington held:

> The State, through DSHS, stands in a special relationship with foster children. While DSHS contracts with foster parents and others to provide day-to-day care for dependent children, the State alone is custodian and caretaker of foster children. Consistent with our precedent, we hold that the special relationship between DSHS and foster children gives rise to a protective duty under *Restatement* § 315(b). . . .

*Id.* at 499 (citation and internal quotation marks omitted). This duty to protect includes the duty to exercise reasonable care in conducting the investigations underlying DSHS's decisions regarding the foster children, and a breach of that duty is actionable even where a § 26.44.050 claim is not available.  *See id.* at 496.

Although *H.B.H. II* and the decision that it affirmed—*H.B.H. v. State*, 387 P.3d 1093 (Wash. Ct. App. 2017) ("*H.B.H. I*")—were decided after the district court's decision in this case, the holdings in *H.B.H. I* and *H.B.H. II* are not novel.  *See H.B.H. II*, 429 P.3d at 496 (noting that *M.W.*, 70 P.3d 954, "confirms, rather than rejects, common law claims [against DSHS] based on a special relationship"). *H.B.H. I* also recognized the State's special relationship with foster children, and a subsequent court of appeals decision recognized that the court of appeals' decision in "*H.B.H. [I]* is consistent with . . . earlier cases . . . finding a duty of protection arising from a special relationship under Restatement (Second) of Torts § 315(b)." *C.L. v. Dep't of*

*Soc. & Health Servs.*, 402 P.3d 346, 350 (Wash. Ct. App. 2017).  Indeed, as early as 1991, the Supreme Court of Washington implicitly recognized a duty of protection in allowing foster children to pursue negligence claims against the State and its caseworkers related to the children's placement in foster homes.  *Babcock v. State*, 809 P.2d 143 (Wash. 1991).

Although *H.B.H.*, *C.L.*, and *Babcock* involved placement of dependent children in foster or adoptive homes and subsequent harm inflicted upon the children as a result of that placement, the relationship here is identical.  As with a child placed in a foster or prospective adoptive home, DSHS is the "custodian and caretaker" of a dependent child who has been removed from his biological parent's custody and subject to court-ordered supervised visitations with the biological parent.  *See H.B.H. II*, 429 P.3d at 499.  That child is "wholly exposed to the will of the [biological] parent" during a visitation, unless DSHS reasonably investigates and supervises the conditions of visitation.  *See H.B.H. I*, 387 P.3d at 1101.  Thus, a special relationship and duty existed between DSHS and the boys.[2]

While the district court's conclusion was made without the benefit of the Washington Supreme Court's holding in *H.B.H. II*, there is sufficient basis to affirm its conclusion that DSHS had a duty to investigate in order to reasonably ensure that a child is not placed in an abusive situation.  Because DSHS owed a duty to protect the boys, we affirm the district court's conclusion that it owed a duty to avoid placing them

---

[2] Because we hold that the second special relationship exception applies, we need not address whether another type of special relationship exception applies.

in an abusive situation during their visitations with Joshua. *See S. Cal. Painters & Allied Trades, Dist. Council No. 36 v. Rodin & Co.*, 558 F.3d 1028, 1034 n.5 (9th Cir. 2009) (recognizing we "may affirm on any ground supported by the record, even if it differs from the district court's rationale" (citation omitted)). DSHS's cross-appeal is denied.

### 2.  Breach

The district court held that, as a matter of law, DSHS did not breach its duty of care owed to the boys in conducting the investigation necessary to provide all material information to the Dependency Court,[3] determining the duration and location of visitations, or facilitating the February 5, 2012 visitation.[4]

What constitutes reasonable care and whether a defendant breached its duty "are fact questions for the trier of fact." *Hertog v. City of Seattle*, 979 P.2d 400, 406 (Wash. 1999). Washington courts have declined to comprehensively define the bounds of the duty DSHS owed to the boys. Indeed, *H.B.H. I* cautioned that "compliance with DSHS policies is [not] necessarily enough to ensure compliance with the duty

---

[3]  Because the inquiry into whether DSHS breached its duty of care by failing to conduct the investigation necessary to inform the Dependency Court of all material information is the same as the inquiry into whether the Dependency Court's February 1 order was a superseding cause, we address both inquiries in the proximate cause section.

[4]  The district court did not specifically address the Coxes' claim that DSHS negligently trained its social workers to conduct visitations. However, it appears the district court held the claim necessarily fails because it concluded that no social worker unreasonably facilitated a visitation.

to exercise ordinary care to protect foster children." 387 P.3d at 1101 n.6.

Here, as to the Coxes' claim that DSHS unreasonably moved the visitation location to Joshua's residence, the Coxes contend the decision took the boys from a secure government facility to a location where Joshua—who was both the primary suspect in the disappearance of his wife and suspected to have been in the possession of child pornography—had unfettered control. DSHS's decision was influenced by discussions Joshua had with the boys about his new residence—discussions that violated the Dependency Court's visitation order. DSHS's decision was also made notwithstanding Joshua's repeated violations of the Dependency Court's visitation order and contrary to DSHS's visitation plans. Further, DSHS continued to allow visitations despite Dr. Manley's notation that "it is difficult to conclude [Joshua] could provide a stable, safe, and consistent nurturing environment for his sons." Similarly, the Coxes claim DSHS rashly decided to increase the duration of the visitations prior to the completion of a psychological evaluation and when the arrest of Joshua was "imminent."

Viewing the facts and reasonable inferences therefrom in the light most favorable to the Coxes, there remains a genuine issue of material fact as to whether DSHS breached its duty of care owed to the boys in deciding to alter the location and duration of the visitations. The district court's reliance on DSHS's "continuing goal of reunification" and "relative success of earlier family visits" to hold that DSHS's decision was reasonable as a matter of law ignores the extraordinary safety concerns Joshua presented. Given the information DSHS possessed regarding Joshua, we cannot say that DSHS's decision to move visitations to Joshua's home and

increase duration of visitations was reasonable as a matter of law.

The Coxes also argue that DSHS unreasonably facilitated the February 5, 2012 visitation. They assert that DSHS should have relocated the visitations before the February 5 visitation because Joshua was in an increasingly desperate position following Dr. Manley's concerns in his report addendum, the Dependency Court's denial of Joshua's motion to remove children from the Coxes' home, and the Dependency Court's order that Joshua undergo a psychosexual evaluation. As to the actual visitation, the Coxes argue it was unreasonable that DSHS had no emergency plan in place, as evidenced by the nearly 10 minutes that elapsed before the visitation supervisor's phone call to 911. Similarly, the Coxes argue that DSHS did not use reasonable care in training its visitation supervisors, and that the visitation supervisor in this case had never conducted a residential supervised visitation before supervising the boys.

Again, we cannot conclude as a matter of law that DSHS reasonably facilitated the February 5 visitation or reasonably trained its visitation supervisors. DSHS reserves the right to change aspects of visitations "based on increased or decreased safety concerns, changes in permanency plans and/or the well-being of the child." Reacting to new information and making appropriate changes falls within the spirit and duty DSHS owes to dependent children. However, no documented response was made or emergency plan contemplated by DSHS despite revelations of increasingly concerning information about Joshua, and DSHS's utilization of a visitation supervisor who lacked firsthand experience with the safety concerns of residential visitations. If such

omissions were reasonable as a matter of law, they would render hollow DSHS's duty to dependent children.

### 3. Proximate Cause

The district court also held that the Dependency Court's February 1 order, which concluded that visitation would "remain as it currently is," was a superseding cause that severed DSHS's liability.

To prevail on its negligence claims, the Coxes must prove DSHS's incomplete investigation and failure to produce material information to the Dependency Court was a proximate cause of the boys' death. *See Petcu v. State*, 86 P.3d 1234, 1244 (Wash. 2004). Proximate cause contains two elements: cause in fact and legal cause. "Cause in fact is a jury question, established by showing that 'but for' the defendant's actions, the claimant would not have been injured." *Id.* at 1244. "Legal cause involves the determination, in view of 'logic, common sense, justice, policy, and precedent,' of the extent to which a defendant should remain legally responsible for the harmful consequences of his acts" and is generally "a question for the court." *Id.* at 1244–45 (quoting *Minahan v. W. Wash. Fair Ass'n*, 73 P.3d 1019, 1023 (Wash. Ct. App. 2003)).

Judicial action may sufficiently disrupt the causal connection between a negligent act and subsequent harm to become a superseding, intervening cause. *See Bishop v. Miche*, 973 P.2d 465, 472 (Wash. 1999). A judicial order constitutes a superseding, intervening cause "if all material information has been presented to the court and reasonable minds could not differ as to this question." *Tyner v. Dep't of Soc. & Health Servs.*, 1 P.3d 1148, 1159 (Wash. 2000).

Otherwise, materiality is "a question for the jury." *Id.* at 1158.

Under this standard, the district court's grant of summary judgment in favor of DSHS must be reversed. While the district court recognized that the Dependency Court's order directed that visitations continue to occur, this directive did not wholly "ratify" the manner in which DSHS conducted the boys' visitations. If DSHS failed to supply "sufficient material information" to the Dependency Court, then the Dependency Court's order did not break the causal chain. *See id.* at 1159.

Information withheld from the Dependency Court included opinions of Detectives Gary Sanders and Teresa Berg, investigators of the child pornography found in Steven Powell's home. Detectives Sanders and Berg told DSHS that, based on their personal interactions with the boys and Joshua, they had concerns for the boys' safety and believed Joshua posed a danger to the boys.[5] DSHS also withheld the opinion of Joshua's sister, Jennifer Graves, who stated Joshua was "unpredictable and volatile" and expressed concerns for the boys' well-being while in Joshua's care. Other information withheld included concerned opinions from the boys' counselor, and Joshua's repeated violations of the Dependency Court's orders.

---

[5] DSHS argues that four social workers and attorney John Long signed declarations denying that Detectives Sanders and Berg ever made these statements. However, at this stage, we do not resolve issues of material fact. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam) ("[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." (citations omitted)).

The district court held that the above-referenced information was immaterial as a matter of law. This is incorrect. The Supreme Court of Washington has recognized that such information as opinions about an individual's capability to do harm to children from family members or those with close familiarity with the individual may be material. *See Tyner*, 1 P.3d at 1158. Here, it cannot be said that the Dependency Court could have reached but one conclusion—to ratify visitations—had it been aware of the withheld information. Thus, the district court erred in resolving as a matter of law the question of materiality as to such information.

## IV.    CONCLUSION

Material issues of fact exist regarding whether DSHS used reasonable care to avoid placing the boys in harm's way, including: (1) determining Joshua's visitation location; (2) facilitating the February 5, 2012 visitation; and (3) training its social workers to conduct visitations. There also exists material issues of fact as to whether DSHS's actions proximately caused the boys to be placed in harm's way. We reverse and remand these issues for trial.

The dismissal of the negligence claims against Defendants State of Washington and Department of Social and Health Services is reversed and remanded because the district court dismissed them without according justifiable inferences in favor of the non-moving party. We express no opinion as to the merits of those reinstated claims.

We affirm the district court's ruling that the social workers, Defendants Forest Jacobson, Randy Stephenson, Jane Wilson, and Billie Reed-Lyyski, were entitled to

qualified immunity from Plaintiffs Judith Cox and Charles Cox's 42 U.S.C. § 1983 claims. The judgment in favor of Jacobson, Stephenson, Wilson, and Reed-Lyyski is therefore affirmed.

We affirm the district court's conclusion that, under Washington state law, DSHS, in making placement decisions, has a duty to reasonably ensure that it does not place a dependent child in an abusive situation.

**AFFIRMED in part, REVERSED in part, and REMANDED**.

Each party to bear its own costs on appeal.