IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| C.R. and J.L., infants, by BRUCE A. WOLF, their guardian ad litem,<br><br>                   Appellants,<br><br>          v.<br><br>STATE OF WASHINGTON,<br><br>                   Respondent. | No. 84682-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. —  In 2014, the Department of Social and Health Services (Department) [1] investigated a report that Timothy Rowe was sexually abusing his stepdaughter, D.L. The Department's investigation concluded that the report was unfounded. In 2019, D.L.'s younger sister C.R. reported that she and their other sister J.L. had been sexually abused by Rowe since 2013. Rowe pled guilty to multiple counts involving the sisters, including rape, incest, and child molestation.

Subsequently, C.R. and J.L. filed this lawsuit against the State alleging negligent investigation and common law negligence. The trial court dismissed their claims because the only report the Department received in 2014 concerned

---

[1] In 2018, all child welfare services were transferred from the Department of Social and Health Services (DSHS) to the Department of Children, Youth and Families (DCYF). RCW 43.216.906. The parties refer to DSHS, DCYF, and Child Protective Services (CPS) interchangeably. We use the term "Department" herein to refer to actions by the relevant state agencies without distinguishing among them.

the abuse of their sister D.L., concluding the Department did not have a duty to investigate the potential abuse of C.R. and J.L.

The issue on appeal is whether C.R. and J.L. have a cause of action against the State for negligent investigation, either based on a statutory duty arising out of RCW 26.44.050 or based on common law. We hold that there is no implied cause of action under the statute for children about whom the State has received no report of suspected abuse. We further conclude that under these circumstances, the State owed no common law duty to C.R. and J.L. when conducting the investigation of D.L.'s report of abuse. We therefore affirm the trial court's dismissal of the complaint below.

FACTS

In November 2014, 15-year-old D.L. disclosed to her mental health therapist that her stepfather, Timothy Rowe, had been touching her inappropriately. D.L. lived near Vancouver, Washington, with Rowe, her mother Brittany Rowe, her 8-year-old sister J.L., her 10-year-old stepsister C.R., and two younger brothers.[2]

After the therapist reported the disclosure, both the Clark County Sheriff's office and the Department investigated. D.L. told the Department's investigator, Amie McKey, that her stepfather had admitted to touching her inappropriately,

---

[2] The brothers were 9 and 4 years old. C.R. and the older boy were Rowe's biological children. D.L. and J.L. were Brittany Rowe's biological children. The youngest boy was the biological child of Rowe and Brittany Rowe.

but that "she was the odd one out," and that her other siblings were "all fine and safe."

McKey interviewed C.R. at school. Asked whether she felt safe at home with her mom and her dad, C.R. said that she did. McKey interviewed J.L. at school immediately after interviewing C.R. When McKey asked J.L. if she felt safe at home, J.L. replied "Mm-hm," and when asked "[e]verything's good there?", she replied "Uh-huh." In the course of the Department's investigation, no one reported abuse or suspected abuse of C.R., J.L., or any of the other children in the Rowe household.

In January 2015, the Sheriff's office concluded that D.L.'s allegations were unfounded and "arose during a period of drama and conflict within her home," that she made inconsistent statements, and that she "expressed focus on getting out of her house or emancipated." The Department likewise determined there was no present danger and closed the investigation.

Approximately 5 years after the investigation of D.L.'s allegations, in October 2019, the Department received a report from C.R. via law enforcement that she and J.L. had been abused by Rowe since C.R. was 8 or 9 years old, i.e., prior to the Department's 2014 investigation of their older sister.[3] At that point, the children still living in the Rowe home were taken into protective custody. Following an investigation by law enforcement, Rowe pled guilty to rape of a child

---

[3] The investigation at issue in this case is the 2014 investigation, not the 2019 investigation.

in the first degree and incest in the first degree as to C.R., child molestation in the first degree as to J.L., and child molestation in the third degree as to D.L.

In 2020, C.R., J.L., and D.L. sued the State in King County Superior Court. D.L. accepted the State's offer of judgment, and C.R. and J.L. voluntarily dismissed their claims without prejudice.

In 2022, Bruce Wolf, guardian ad litem for C.R. and J.L., sued the State for negligent investigation and common law negligence. C.R. and J.L. moved for partial summary judgment on the question of whether the State owed them a duty under RCW 26.44.050 or common law. The State did not move for summary judgment but asked the court to dismiss C.R. and J.L.'s claims because it owed no duty to them. The trial court denied C.R. and J.L.'s motion and, "[p]ursuant to C.R. 56," it dismissed their claims with prejudice.[4]

C.R. and J.L. sought direct review before the Supreme Court of Washington. The Supreme Court transferred the case to this court.

ANALYSIS

C.R. and J.L. challenge the trial court's denial of their motion for partial summary judgment on the legal question of whether the State owed them a duty and the dismissal of their claims of negligent investigation and common law negligence. The standard of review for an order of summary judgment is de novo, and the appellate court performs the same inquiry as the trial court.

_____

[4] The Department never moved for summary judgment. However, at oral argument before the trial court, C.R. and J.L. agreed that "under the circumstances" the court should dismiss their claims in order to facilitate their appeal.

<u>Washburn v. City of Federal Way</u>, 178 Wn.2d 732, 752, 310 P.3d 1275 (2013). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

The threshold determination in any negligence action is whether a duty of care is owed by the defendant to the plaintiff. <u>Taylor v. Stevens County</u>, 111 Wn.2d 159, 163, 759 P.2d 447 (1988). If the defendant owed the plaintiff no duty, the negligence action fails. <u>Folsom v. Burger King</u>, 135 Wn.2d 658, 671, 958 P.2d 301 (1988). A duty of care may exist by virtue of the common law or a statute. <u>Mathis v. Ammons</u>, 84 Wn. App. 411, 416-17, 928 P.2d 431 (1996). Whether the defendant owes a duty to the plaintiff is a question of law reviewed de novo. <u>Hertog v. City of Seattle</u>, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

C.R. and J.L. brought two alternative causes of action, negligent investigation and common law negligence. They claim the Department owed them an implied duty under RCW 26.44.050 not to negligently investigate their abuse by gathering biased or incomplete information. Alternatively, they claim the Department affirmatively acted, so it owed them a common law duty of reasonable care under either RESTATEMENT (SECOND) OF TORTS § 281 or § 302B.

I.      Implied cause of action under RCW 26.44.050

It is well-settled that the Department has an implied duty to investigate child abuse under RCW 26.44.050. <u>Tyner v. State Dep't of Soc. & Health Servs., Child Protective Servs.</u>, 141 Wn.2d 68, 82, 1 P.3d 1148 (2000) (implying a cause of action under the analysis set forth in <u>Bennett v. Hardy</u>, 113 Wn.2d 912, 919,

784 P.2d 1258 (1990)). However, Washington courts do not recognize a general tort claim for negligent investigation in this context. M.W. v. Dep't of Soc. & Health Servs., 149 Wn.2d 589, 601, 70 P.3d 954 (2003). Instead, the cause of action against the Department for negligent investigation is a "narrow exception" because it is based on, and is limited to, the statutory duty to investigate child abuse and the harms that duty was designed to address. Id. Thus, an implied cause of action for negligent investigation "must stem from the type of harm the statute seeks to prevent, namely, 'the abuse of children within the home and unnecessary interference with the integrity of the family.' " Desmet v. State by and through Dep't of Soc. & Health Servs., 200 Wn.2d 145, 160, 514 P.3d 1217 (2022) (quoting M.W., 149 Wn.2d at 602)). The statute supports a claim for negligent investigation only when the Department conducts a biased or faulty investigation that leads to a harmful placement decision, such as placing the child in an abusive home, removing the child from a nonabusive home, or failing to remove a child from an abusive home. M.W., 149 Wn.2d at 591. General legislative statements such as "the child's health and safety shall be the paramount concern" in RCW 13.34.020 do not give rise to a general duty, and it is an error for a court to imply a duty from such general statements rather than analyze a statute's stated purpose. Id. at 599-600.

We begin our analysis with the statutory language at issue. Former RCW 26.44.050 provides in relevant part:

> [U]pon the receipt of a report concerning the possible occurrence of abuse or neglect, the law enforcement agency or the department of social and health services must investigate and provide the

6

> protective services section with a report in accordance with chapter 74.13 RCW, and where necessary to refer such report to the court.

Former RCW 26.44.050 (2013). C.R. and J.L. contend that the statute's plain language "requires the investigation of any abuse upon [the Department's] receipt of an abuse report," and that "[i]t is noteworthy that this language of RCW 26.44.050 does not confine the duty to investigate to *a particular child*." By contrast, the Department argues that the plain language unambiguously provides that "unless there is a report, there is no duty to investigate."

The State is correct that the statute plainly conditions the duty to investigate "upon the receipt of a report concerning the possible occurrence of abuse or neglect." Former RCW 26.44.050. As C.R. and J.L. implicitly acknowledge, while the statute may not confine the duty to a particular child, neither does the plain language expressly state that the duty to investigate extends to all children within a family or household.

C.R. and J.L. point to the State's "well-established practice" of training CPS caseworkers that upon receipt of a report of abuse of one child, they should investigate the possibility of abuse of all children in the child's family unit. But this is not a plain language argument, as the plain language does not reference this practice. Moreover, while internal Department practices and policies may provide evidence of a standard of care, they cannot establish a duty. See Joyce v. Dep't of Corrs., 155 Wn.2d 306, 323-24, 119 P.3d 825 (2005) (internal policies that are not promulgated pursuant to legislative delegation do not have the force of law). Thus, even if the plain language of former RCW 26.44.050 does not specify the

7

scope of the ensuing investigation, the only reasonable reading is that the Department must investigate "the possible occurrence of abuse or neglect" that is the subject of the report.

The Department contends that "this case falls squarely within" the holding in Wrigley v. State, 195 Wn.2d 65, 455 P.3d 1138 (2020). We disagree. In Wrigley, the sole issue was whether predictions of future abuse constituted a "report concerning the possible occurrence of child abuse or neglect" invoking the Department's duty to investigate under former RCW 26.44.050. Id. at 70, 77. After receiving its sixth referral for abuse and neglect, the Department removed six-year-old A.A. from his mother's home, placed him in shelter care, and filed a dependency petition. Id. at 68. The mother told the Department that A.A.'s biological father had a criminal history, abused alcohol and drugs, and engaged in domestic violence that led her to obtain a restraining order against him. Id. Despite lacking prior contact with A.A., the father petitioned for A.A. to be placed with him. Id. The boy's mother told the Department social worker she opposed the placement and that if A.A. remained with the father, the boy "would be dead within six months." Id. at 69. The court dismissed the dependency petition and placed A.A. with the father. Id. Tragically, less than 3 months later, A.A. was killed after the father struck him on the head. Id.

The court held that absent an allegation of current or past abuse or neglect by the father toward A.A., the mother's prediction that A.A. would be dead within six months was not a "report" sufficient to trigger the duty to investigate. Id. at 77. The court reasoned that the Department's duty to

investigate cannot be invoked until it receives a report. Id. at 71 (construing the former RCW 26.44.050). Focusing on the language "report concerning the possible occurrence of abuse or neglect" in former RCW 26.44.050, the court first deemed it ambiguous as to whether it encompassed future conduct. Id. at 72. Then, looking to the context of the statute as a whole, the court noted that other provisions containing the word "reports" supported finding that reports are "intended to be backward looking, grounded in some past conduct." Id. at 73. "The overall statutory purpose and scheme confirm that a report must allege some previous or existing behavior or conduct concerning the child. . . . [S]ome conduct or incident must exist to make a finding of whether child abuse or neglect occurred." Id. at 74-75. Such a report is necessary "[f]or the statute to remain harmonious with constitutional familial rights" because it is "[o]nly where parental actions or decisions conflict with the physical or mental health of the child" that the Department possesses a right to intervene within the family unit. Id. at 76.

Here, unlike in Wrigley, it is not disputed that there was a report—the report by D.L. about Rowe's inappropriate touching of her—that triggered a duty to investigate. But contrary to the Department's contention, Wrigley does not answer the question posed here: whether a child who is not the subject of a report has an implied cause of action for negligent investigation of a report of abuse to another child in the same family unit or household.[5]

---

[5] The concurring opinion in Wrigley suggests a separate basis for declining to extend the implied cause of action under RCW 26.44.050 in that case: that the investigation was of a

Moreover, the plain language of the statute is not the end of the inquiry in this case. While the statute may limit the scope of the investigation, the determination of who has an implied cause of action is a different question. Whether there is a cause of action for negligent investigation under RCW 26.44.050 requires determining (1) whether the plaintiff is within the class of persons for whose benefit the statute was enacted, (2) whether the legislative intent supports creating a remedy, and (3) whether the underlying purpose of the legislation is consistent with inferring a remedy. M.W., 149 Wn.2d at 596; see also M.M.S. v. Dep't of Soc. & Health Servs. & Child Protective Servs., 1 Wn. App. 2d 320, 331, 404 P.3d 1163 (2017).[6]

C.R. and J.L. contend that general statements of legislative intent in RCW 13.34.020 and RCW 26.44.010 make it "clear that Washington public policy is to prevent the abuse of children, in the context of the family unit." Indeed, in the first case to recognize an implied cause of action for negligent investigation, the court stated broadly that the legislature's purpose was "to protect children and preserve the integrity of the family." Tyner, 141 Wn.2d at 80. However, in subsequent cases, courts have established limits on who may bring an action for negligent investigation.

---

different type, "namely, the State's investigation into whether living with [the father] would be a suitable placement for A.A. after he was removed from [the mother's] care." Id. at 85. (Stephens, C.J., concurring). Thus, according to the concurrence, "[t]his circumstance simply falls outside the scope of the statute." Id.

[6] The second element of the Bennett test, whether the legislative intent supports creating a remedy, is not at issue when analyzing chapter 26.44 RCW. M.W., 149 Wn.2d at 596-97.

In M.W., our Supreme Court held that general statements of legislative intent do not support a general statutory duty of care for a claim of negligent investigation, and it is error for a court to imply a duty from such general statements rather than analyze a statute's stated purpose. 149 Wn.2d at 599-600. Then, in Ducote v. Dep't of Soc. & Health Servs., the court rejected the argument that a stepparent had a cause of action based on broad language in Tyner that suggested the State had a " 'duty to act reasonably in relation to all members of the family.' " 167 Wn.2d 697, 704, 222 P.3d 785 (2009) (quoting Tyner, 141 Wn.2d at 79). Instead, "[c]onsistent with the test articulated in Bennett, we confirm that the class of persons who may sue for negligent investigation is limited to those specifically mentioned in RCW 26.44.010, namely, parents, custodians, and guardians, and the child or children themselves." Id. at 704.

Certainly, children generally are within the class of persons who may in some circumstances sue for negligent investigation under RCW 26.44.050. And C.R. and J.L. are correct that actual past or current abuse is not required; a child who is the subject of a report about possible or suspected abuse also may bring an action for negligent investigation under the statute. See Rodriguez v. Perez, 99 Wn. App. 439, 445, 994 P.2d 874 (2000) (allowing negligent investigation claim by parents and children arising from law enforcement's aggressive investigation of an alleged "sex ring" based on multiple reports about a number of parents and a number of abused children). See also Wrigley, 195 Wn.2d at 77 (requiring existing conduct "does not necessarily mean that [the Department]

11

must wait for the child to be harmed before taking any action"; "[c]onduct that 'constitute[s] a clear and present danger' to the child's welfare will still trigger the action even where no harm has occurred yet.") (quoting former RCW 26.44.020(14)).

However, courts have rejected claims that all children and families of children who could have been exposed to an abuser, but were not themselves the subject of reported abuse or possible abuse, have an implied cause of action for negligent investigation. For example, in Boone v. Dep't of Soc. & Health Servs., the Department received reports of abuse at a private in-home day care in 1992, 1997, and 2006. 200 Wn. App. 723, 727-29, 403 P.3d 873 (2017). The Boone children attended the day care between 2004 and 2006. Id. at 729. In 2006, their mother reported abuse by the day care operator's husband. Id. The report was investigated and determined to be founded. Id. The Boones argued that the duty to investigate reports of abuse with reasonable care "extends to every child who could foreseeably be harmed by a negligent investigation." Id. at 732. However, the court declined to extend the duty beyond children who were the subject of the reported abuse or neglect. Id. Analyzing the first Bennett factor, whether the plaintiff was within the class of persons for whose benefit the statute was enacted, the court reasoned, "Insofar as the Boones rely on the investigations into the abuse of other children in the day care in 1992, 1997, and January 2006, the Boones are not within the class of persons for whose benefit RCW 26.44.050 was enacted because the Boone children were not the subjects of the reports of alleged abuse that triggered those investigations." Id. at 734. As

12

to the other applicable Bennett factor, the underlying purpose of the legislation, the court held that "the duty to investigate reasonably is not meant to protect all children from all harm"; rather, the statute "is meant to respond to reports of child abuse or neglect and to provide protection for children when there is a reason for the Department or law enforcement to believe a child is being abused or neglected." Id. at 736-37 (citing M.W., 140 Wn.2d at 598-99).

Similarly, in M.M.S., Division Two declined to find M.M.S. had a cause of action based on the Department's failure to discover and disclose her stepbrother J.A.'s prior sexualized behavior that had been documented in his earlier dependency proceedings. 1 Wn. App. 2d at 322. The court reasoned that neither M.M.S. nor her mother was within the class of persons for whom RCW 26.44.050 was enacted to benefit because there was no report that M.M.S. was abused or neglected before her stepbrother J.A. was placed in her home. Id. at 331-32.

The Boone court distinguished two other cases in which the plaintiffs were the subjects of specific allegations of abuse, and, thus, were within the class of persons for whose benefit RCW 26.44.050 was enacted. 200 Wn. App. at 734-35. First, in Lewis v. Whatcom County, during the investigation of abuse of a different girl, the sheriff received two reports that each discussed the likelihood that the plaintiff was also being abused. 136 Wn. App. 450, 452, 149 P.3d 686 (2006). Thus, while the plaintiff was not the subject of the original report of abuse, there were specific allegations that she was being abused. Likewise, in Yonker v. Dep't of Soc. & Health Servs., a child's mother reported possible abuse by the child's father, but CPS failed to take action. 85 Wn. App. 71, 73-74, 930

13

P.2d 958 (1997). Thus, the plaintiff was the subject of the reported abuse that triggered the duty to investigate. Id. at 81.

Here, the Department received no report of abuse of C.R. or J.L. until C.R.'s disclosure in 2018. When C.R. and J.L. were interviewed as part of the Department's investigation of their sister D.L.'s report, neither of them reported any abuse. C.R. said she felt safe with her dad, and J.L. also answered affirmatively to the investigator's query as to whether she felt safe at home. D.L. also said her other siblings are "all fine and safe." The fact that they shared a household with D.L. at the time of her disclosure in 2014 does not alone support extending the duty Department owed to J.L. to them.

C.R. and J.L. are not within the class of persons who may sue for negligent investigation because there was no report of abuse, or suspected or possible abuse, of either of them. We conclude that the Department was entitled to judgment as a matter of law because, absent a report of abuse about C.R. and J.L., they have no cause of action under RCW 26.44.050 for negligent investigation.[7]

II.    Common law negligence

C.R. and J.L. argue in the alternative that the Department owed them a common law duty under either RESTATEMENT (SECOND) OF TORTS § 281 or § 302B

---

[7] C.R. and J.L. also argue the Department's investigation of D.L. was incompetent. But the question before the trial court was the existence of a duty, not whether the Department breached a duty. The scope of the present appeal is likewise limited to the existence of a duty, so we do not address this argument. We also need not address the Department's contention that we should disregard C.R. and J.L.'s statement of the facts under RAP 10.3(a)(5) on the grounds that it is argumentative.

when it investigated their sister's report of abuse, "undertook to investigate" their abuse, and required Rowe to leave the family home overnight even when their older sister D.L. was already out of the house. The Department counters that Washington courts do not recognize a common law tort claim for negligent investigation in this context and the court should decline to extend a common law duty under the circumstances in this case.[8] We agree with the Department.

RESTATEMENT (SECOND) OF TORTS § 281, "Statement of the Elements of a Cause of Action for Negligence," states:

> The actor is liable for an invasion of an interest of another, if:
> (a) the interest invaded is protected against unintentional invasion, and
> (b) the conduct of the actor is negligent with respect to the other, or a class of persons within which he is included, and
> (c) the actor's conduct is a legal cause of the invasion, and
> (d) the other has not so conducted himself as to disable himself from bringing an action for such invasion.

RESTATEMENT (SECOND) OF TORTS § 281 (AM. LAW INST. 1965). Thus, at common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others. Beltran-Serrano v. City of Tacoma, 193 Wn.2d 537, 550, 442 P.3d 608 (2019) (citing § 281).

The Department argues that § 281 merely restates the elements of negligence, and that in Washington, there is no common law tort claim for negligent investigation, citing M.W., 149 Wn.2d at 601. C.R. and J.L. assert they

---

[8] The Department argues that Appellants did not preserve their § 302B argument. However, C.R. and J.L. note, in their summary judgment briefing, that they relied on Washburn, 178 Wn.2d 732, and Robb v. City of Seattle, 176 Wn.2d 427, 295 P.3d 212 (2013), both of which analyze § 302B. We therefore address their § 302B argument on appeal.

are not arguing that they are owed a common law duty to investigate, but rather, that a common law duty arises because "when a person voluntarily begins to assist a person needing help, the person must render that assistance in a non-negligent fashion."

The cases to which C.R. and J.L. point for support hold that if a government official owes an individual a legal duty, the official must act reasonably in undertaking that action. In Washburn, Federal Way police served an anti-harassment order on a woman's partner at her request. 178 Wn.2d at 739. She informed law enforcement that the person to be served was her domestic partner and that he did not know she had obtained the order or that it would force him out of her home. Id. She informed law enforcement that he would likely react violently to service of the order and he had a history of assault, and she requested a Korean language interpreter. Id. at 739-40. Yet the officer served the order without bringing an interpreter, did not interact with the woman who had requested the order or inquire as to her safety, and left her to explain to her partner that he needed to vacate the home. Id. at 740. The partner stabbed the woman to death within hours of being served with the order. Id. The court affirmed that the city owed the woman a legal duty to serve her anti-harassment order and a common law duty to act reasonably in doing so. Id. at 752. The court then relied on RESTATEMENT (SECOND) OF TORTS § 302B to hold more specifically that this "duty to act reasonably includes a duty to take steps to guard another against the criminal conduct of a third party." Id. at 757.

In Beltran-Serrano, the court held that a mentally ill homeless man, whom a city of Tacoma police officer shot multiple times after a simple social contact escalated into the use of deadly force, could sustain a negligence action against the city. 193 Wn.2d at 540, 548. The court recognized the § 281 common law duty to refrain from causing foreseeable harm in interactions with others, and held that this common law duty applied in the context of law enforcement and "encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance." Id. at 550.

In Mancini v. City of Tacoma, Tacoma police serving a search warrant broke into the wrong apartment. 196 Wn.2d 864, 868, 479 P.3d 656 (2021). The court sustained the jury's verdict in the plaintiff's favor because police executing a search warrant owed a duty of reasonable care when doing so. Id. at 879.

Unlike these cases involving the common law duty under § 281, here, as discussed above, there is no underlying statutory duty to investigate owed by the Department to C.R. and J.L. because it received no report of possible abuse as to them. The Department's duty to conduct an investigation with reasonable care was limited by the scope of the duty to investigate. Thus, unlike the police departments in Washburn, Mancini, and Beltran-Serrano, in the present case the Department had no duty to C.R. and J.L. for which it was required to exercise reasonable care. The Department's duty to investigate is a "narrow exception" implied from RCW 26.44.050. Wrigley, 195 Wn.2d at 76 (quoting M.W., 149 Wn.2d at 601). That narrow exception applies to the Department's conducting

17

"an incomplete or biased child abuse investigation that resulted in a harmful placement decision." M.W., 149 Wn.2d at 601.

C.R. and J.L. further argue that this court should determine the Department owed them a duty under RESTATEMENT (SECOND) OF TORTS § 302B, "Risk of Intentional or Criminal Conduct," which states as follows:

> An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

RESTATEMENT (SECOND) OF TORTS § 302B (AM. LAW INST. 1965).[9] A person may have a duty to protect others from the criminal acts of third parties when the person's "own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct." M.M.S., 1 Wn. App. 2d at 329 (quoting § 281 cmt. e) (citing Washburn, 178 Wn.2d at 757-58). Mere nonfeasance is insufficient; § 302B requires misfeasance. Robb v. City of Seattle, 176 Wn.2d 427, 439, 295 P.3d 212 (2013). Further, the misfeasance needs to create new harm; the failure to eliminate risk is insufficient. Id.

Thus, in M.M.S., the court rejected the mother's argument that the Department's failure to warn her of her stepson's history of sexually inappropriate behavior with younger children was an affirmative act establishing a duty under § 302B. 1 Wn. App. 2d at 329. The court noted that this argument was "actually

---

[9] Recognizing that criminal conduct may be foreseeable "in limited circumstances," Washington has adopted RESTATEMENT (SECOND) OF TORTS § 302B. Washburn, 178 Wn.2d at 757.

based on policy considerations," and, moreover, the facts did not support concluding that Department had an affirmative duty to warn the mother of the stepson's prior behavior because there was no unreasonable risk of harm." Id. at 330. In Robb, the court reversed summary judgment against the city, determining there was no common law duty under § 302B when police officers failed to collect shotgun shells laying on the ground that were later used to kill Robb. 176 Wn.2d at 439-40. The court reasoned that the officers did not commit misfeasance, only nonfeasance; they did not affirmatively create a new risk. Id. at 437-38.

In contrast, in Parrilla v. King County, this court determined there was a § 302B common law duty and reversed dismissal in the County's favor after a bus driver exited his bus with the engine running, leaving a "visibly erratic" passenger on board. 138 Wn. App. 427, 430, 157 P.3d 879 (2007). The passenger then stole the bus and crashed into Parrilla's car. Id. We held that the driver had a duty to guard against a third party's foreseeable criminal conduct exists where his own affirmative act had created or exposed another to a recognizable high degree of risk of harm through such misconduct. Id. at 439.

C.R. and J.L. argue that these cases addressing § 302B "clearly articulate that a defendant may assume a duty to a plaintiff by its misfeasance." They then contend that by interviewing them the Department undertook a duty to investigate their possible abuse by Rowe, so it owed them a duty to do so reasonably and by failing to competently investigate their abuse, the Department created or enhanced their risk.

However, interviewing C.R. and J.L. as part of the investigation into D.L.'s reported abuse was not an affirmative act of misfeasance that created their peril. The tragic but undisputed facts pled in this case are "that C.R. had disclosed that she and J.L. had been repeatedly raped by Mr. Rowe since she [was] approximately 8 or 9 years old," i.e., prior to the Department's 2014 investigation of D.L. and its interviews of C.R. and J.L.[10]

C.R. and J.L. also argue that the Department increased their peril because after the investigation, Rowe escalated his abuse of them. Br. of Appellant at 33-34 ("the continuation, and intensification, of Rowe's sexual abuse of the girls for years); Reply Br. of Appellant at 23 ("No longer satisfied with merely molesting the two girls, he began raping them after CPS closed its negligent investigation."). But they provide no citation to the record for this argument. Even plaintiffs' expert Barbara Stone stops short of declaring that Rowe's abuse of C.R. and J.L. intensified after the investigation of D.L.'s report.

This tragic fact matters because the failure to eliminate risk is insufficient to establish the act of affirmative misfeasance established a duty under § 302B. See Robb, 176 Wn.2d at 439. Therefore, because the Department did not create or increase C.R. and J.L.'s peril when it interviewed them in 2014, its conduct was not an affirmative act of misfeasance giving rise to a duty under § 302B.

---

[10] Regardless of whether as C.R. and J.L. argue, they were the non-moving party as to the court's dismissal of their claims, there can be no dispute regarding this material fact, when their complaint alleges, and the Department admits, C.R. and J.L. were being abused by Rowe when it interviewed them about the abuse of their older sister in 2014.

III.    <u>Costs</u>

C.R. and J.L. request costs on appeal. Because they do not prevail, we deny the request for costs.

Affirmed.

_____
Chung, J.

WE CONCUR:

_____        _____
Birk, J.        Smith, C.J.